Motion to dismiss denied May 2; argued on the merits October 15;
affirmed November 12, 1947

# MARTIN *v.* HARRISON
### 180 P. (2d) 119, 186 P. (2d) 534

*Robin D. Day,* of Salem, for motion.

*Herbert M. Schwab,* of Portland, contra.

Before ROSSMAN, Chief Justice, and LUSK, BELT, BAILEY and HAY, Justices.

ROSSMAN, C. J.

This cause is before us upon a motion of the re-

spondent to dismiss this appeal. The contention which underlies the motion is that the failure of the appellant to have filed timely a transcript on appeal requires a holding that the appellant abandoned her appeal. October 28, 1946, the respondent was awarded judgment against the appellant in the amount of $4,000. December 27, 1946, the appellant served and filed notice of appeal. January 5, 1947, an undertaking on appeal was served and filed.

Section 10-803, O. C. L. A., as amended by Oregon Laws 1943, chapter 119, section 1, says:

"1. * * * Upon notice of appeal being given, as herein provided, and entered in the journal of the court or filed with the clerk of the court, as the case may be, the appellate court shall have jurisdiction of the cause * * *.

"2. Within 10 days from the giving of notice or service of notice of the appeal, the appellant shall cause to be served on the adverse party or his attorney an undertaking * * *. Within five days after the service of said undertaking the adverse party or his attorney shall except to the sufficiency of the sureties * * *.

"4. From the expiration of the time allowed to except to the sureties in the undertaking, or from the justification thereof if excepted to, the appeal shall be deemed perfected."

Section 10-807, O. C. L. A., as amended by Oregon Laws 1943, chapter 119, section 2, says:

"Upon the appeal being perfected the appellant shall, within 30 days thereafter, file with the clerk of the appellate court a transcript, * * *."

January 29, 1947, the circuit court entered an order which said:

"For good cause shown, and based upon the application of the attorneys for defendants, the

appealing parties hereto, it is hereby ordered that the defendants' time in which to file in the Supreme Court the transcript on appeal and judgment roll in the within cause, be and the same hereby is extended to and including the 15th day of March, 1947, * * *.''

In the margin of that order appears the following: "Consented to by Robin D. Day, plaintiff's attorney."

March 10, 1947, the circuit court entered an order which extended to April 5, 1947, the appellant's time to file the transcript on appeal. April 11, 1947, although the transcript had been prepared by the county clerk, it had not been filed with the clerk of this court. April 11, 1947, the respondent filed the motion now before us.

Section 10-807, subdivision 2, O. C. L. A., which, as amended by Oregon Laws 1943, chapter 119, § 2, says:

"2. The trial court or the judge thereof, or the supreme court or a justice thereof, may, upon such terms as may be just, by order, enlarge the time for filing the transcript, but the application for such order shall be served and filed within the time allowed to file transcripts, and the order shall be made within 10 days thereafter; provided, that nothing contained in this act shall prevent the trial court or a justice of the supreme court from permitting an extension of time for the filing of a transcript in any appeal at any time in accordance with and upon written stipulation and agreement of the attorneys for all of the parties in interest."

April 16, 1947, the appellant filed in this court the transcript on appeal. Accompanying it was a motion by appellant's counsel which said:

"Your appellant applies for an order of this Court curing the default consisting of her failure to file with this Court transcript on appeal and judgment roll as aforesaid within the time allowed

by the aforementioned order. This application is based upon the provision of O. C. L. A., 10-803 and 10-807, as amended by chapter 119, Oregon Laws of 1943, which permits the appellant with the consent of this court, for good cause shown, to cure a default other than failure to file a notice of appeal. In support of this application, there are submitted herewith the affidavit of Herbert M. Schwab, of attorneys for appellant, and the transcript on appeal, judgment roll, and bill of exceptions * * *."

Thus, there are two motions before us—one by the respondent, which seeks a dismissal of the appeal, and the other by the appellant, which asks us to consider the transcript on appeal, notwithstanding its belated filing.

The affidavit of Mr. Schwab, which is mentioned in the words which we quoted from the appellant's motion, concludes thus:

"The failure to file the transcript on appeal and judgment roll in this court within the time allowed, i. e., by March 25th, 1947, was due to neglect on my part, which I believe should be considered as excusable neglect, under the circumstances as set forth herein."

Mr. Schwab's affidavit quotes from correspondence and sets forth in other ways circumstances which indicate that if he failed to exercise due diligence in effecting a timely filing of the transcript, the neglect was not gross. The truthfulness of his affidavit has not been challenged, and we shall accept it as a correct portrayal of the facts. No one claims that the appellant is seeking to delay this appeal, nor is it contended that the failure to have filed promptly the transcript prejudiced the respondent. Seemingly, while the trancript lay uncalled for in the county clerk's office, work was progressing upon the bill of exceptions and thus

the neglect of the transcript did not engender delay in the progress of the appeal.

The fact that Mr. Schwab's office is in Portland, and this item of business is pending in Salem, are circumstances that account for some of the trouble. After the transcript was completed Mr. Schwab gave two directions concerning it, each of which was reasonable, but neither of which brought the document to the office of the clerk of this court. We believe that his inadvertence can be excused without prejudicing the respondent and without encouraging time-consuming carelessness in the prosecution of appeals. By reverting to Mr. Schwab's affidavit we see that there has now been filed, not only the transcript on appeal, but also the bill of exceptions including a transcript of the evidence.

In a preceding paragraph we quoted subdivision 2 of amended § 10-807, O. C. L. A. Prior to its amendment the words which we quoted were preceded by the following:

"If the transcript or abstract is not filed with the clerk of the appellate court within the time provided, the appeal shall be deemed abandoned, and the effect thereof terminated, * * *."

That provision was repealed by the 1943 amendatory act. Before its amendment the first paragraph of § 10-807 set forth several requirements concerning the transcript and then said:

"After compliance with the provisions hereof the appellate court shall have jurisdiction of the cause, but not otherwise."

By virtue of that clause the transcript became regarded as a jurisdictional paper, and a failure to file it timely was fatal to the appeal. See subdivisions 21 and 27 of the annotation to § 10-807 in 2 O. C. L. A., and also

*State v. Stone,* 178 Or. 268, 166 P. (2d) 980. But the clause just quoted is no longer a part of our laws; it was repealed by the 1943 amendment.

As is pointed out in *Williams v. Ragan,* 174 Or. 328, 143 P. (2d) 209, and in *Pond v. Jantzen Knitting Mills,* this day decided by us, the amendment to §§ 10-803 and 10-807, O. C. L. A., by Oregon Laws 1943, chapter 119, substitute for the filing of the transcript the notice of appeal as the event which confers jurisdiction upon this court over the appealed cause. To avoid being misunderstood, we point out that a notice of appeal, in order to confer jurisdiction upon this court, must comply with the requirements of amended § 10-803, which are (1) an oral notice given in open court or in chambers must "be entered in the journal of the court", and (2) a written notice must be signed, served and filed "with proof of service indorsed thereon with the clerk of the court."

Oregon Laws 1943, chapter 119, besides amending § 10-807 in the details to which we have drawn attention, also amended § 10-803, O. C. L. A. Those amendments received attention in the Pond case. Among the changes wrought in § 10-803 by the 1943 act is the following:

"After the appellate court has acquired jurisdiction of the appeal in the manner hereinabove provided, the omission of a party to perform any of the acts herein required or within the time required shall be a cause for dismissal of the appeal, and the appellate court may, on motion of the respondent, dismiss the appeal; provided, however, the appellate court shall, upon good cause shown, relieve a party from his failure to comply with any of such provisions and may permit an amendment or performance of such act on such terms as may be just * * *."

The purpose of the paragraph just quoted is not only to authorize this court to dismiss appeals in which an appellant is inexcusably subjecting the judgment creditor to delay, but also to enable this court to save from dismissal appeals prosecuted in good faith. The last clause of the paragraph takes into its embrace every act required of an appellant by amended § 10-803, including the filing of the transcript but excepting the giving of notice of appeal. Since the presentation of a bill of exceptions is governed by § 5-703, O. C. L. A., and is not within the purview of the term "acts herein required," found in amended § 10-803, the assuasive powers conferred upon this court by other parts of § 10-803 do not extend to the bill of exceptions: *Williams v. Ragan,* supra.

The question now occurs whether we should sustain the respondent's motion and dismiss this appeal on account of the belated filing of the transcript, or whether we should accede to the appellant's motion and relieve her from her tardiness.

The motion to dismiss the appeal was filed April 11 and, therefore, thirty days have not passed since services of the purported notice upon the appellant of her failure to have filed timely the transcript. Since thirty days have not passed, the clause of § 10-803 is not applicable to this case which says that if thirty days elapses after an appellant has been notified by the respondent of his failure to perform an act required by §§ 10-803 and 10-807, and if at the end of the thirty-day period the act still remains unperformed, the appeal shall be deemed abandoned. Since that clause is not applicable to this case, the respondent evidently depends upon a preceding clause which says:

"The omission of a party to perform any of the

acts herein required or within the time required shall be a cause for dismissal."

■ The 1943 amendment is clearly intended to vest this court with wide discretionary power concerning the progress of appealed cases, but it is likewise apparent that the discretionary power is to be exercised only where "good cause" is shown by an appellant who resists a motion to dismiss. The 1943 amendments were not intended to encourage procrastination.

■ If it appeared that the respondent was prejudiced through the inadvertance of appellant's counsel, that fact would be entitled to consideration in the disposition of the two pending motions. Or if it appeared that the neglect concerning the transcript was accompanied with an absence of work upon other phases of the appeal, that fact would also be entitled to consideration at this point. But there is no claim of prejudice, and it affirmatively appears that, although the transcript was neglected, the bill of exceptions was completed in the interval. It seems clear that one purpose of the 1943 amendment is to authorize the court to save from dismissals appeals where the appellant's inadvertent failure to perform an act required by §§ 10-803 and 10-807 inflicted no prejudice upon the respondent. We accept the explanation tendered by Mr. Schwab as reasonably satisfactory. We shall sustain the appellant's motion and deny the respondent's. The power which is given to us by the 1943 amendment authorizes us to impose "such terms as may be just" when we rule in favor of an appellant who has been guilty of excusable neglect. We observe from the record that the respondent, concurrently with the presentation of her motion to dismiss, filed a transcript prepared by the county clerk so as to afford a basis

for this court's action upon her motion. The transcript which she filed was the identical one required by § 10-807, and, therefore, the appellant should have filed it. In fact, the failure of the appellant to have filed it is the basis of the respondent's motion to dismiss. The respondent should be reimbursed by the appellant for the cost of the transcript, and we order the appellant to make the reimbursement within ten days or suffer the dismissal of this appeal. We also observe from the record that the judgment attacked by this appeal was entered October 28, 1946, and, therefore, more than six months have passed since that time. Six months must appear to the judgment creditor as an undue length of time for the preparation of no more than the notice of appeal, the undertaking and the bill of exceptions. An inspection of the record before us induces a belief that the work of preparing the abstract of record and the appellant's brief will be unattended with serious difficulties. The bill of exceptions submits only four exceptions; one concerns a nonsuit; another a directed verdict; and a third a motion for a new trial. Seemingly all three of those will be predicated upon the same principles of law. The fourth exception attacks an instruction. We shall take all of the foregoing into consideration in the event that the appellant should seek further time.

The respondent's motion is denied; the appellant's is sustained.

---

Argued on the merits October 15; affirmed November 12, 1947

ON THE MERITS

'186 P. (2d) 534'

*Herbert M. Schwab,* of Portland (with James Arthur Powers, of Portland, on the brief), for appellant.

*Norman K. Winslow,* of Salem (with Robin D. Day, of Salem, on the brief), for respondent.

Before Rossman, Chief Justice, and Lusk, Belt, Kelly, Bailey and Brand, Justices.

BAILEY, J.

This action was instituted by plaintiff, Vera Martin, against defendant, Helen G. Harrison, to recover damages for injuries suffered by plaintiff when struck by an automobile owned by the defendant and driven by her husband. From a judgment in favor of plaintiff, defendant has appealed. The only two questions here presented are whether the court erred (1) in not holding that plaintiff was guilty of contributory negligence as a matter of law, and (2) "in its instructions to the jury regarding the crosswalk." We shall consider these questions in the order mentioned.

The accident occurred at about 5:30 o'clock in the afternoon on November 27, 1945, at or near the intersection of Hall street and Fairgrounds road in the city of Salem. Fairgrounds road at the place of the mishap extends generally northeasterly and southwesterly, and proceeding northerly therefrom it curves slightly to the left. Hall street intersects, but does not cross, Fair-

grounds road on the southeast side thereof, forming an acute angle at the northeast corner. It is a "fairly narrow", unpaved street, with a sidewalk only on the south side. Fairgrounds road is 44 feet and 3 inches wide from curb to curb and is paved the entire width, with a yellow line marking the center.

At the northeast corner of Fairgrounds road and Hall street is located the Davis Oil Company's filling station and garage. Across Hall street and at the southeast corner of the streets is located the Davies Grocery. The plaintiff was on her way to this store at the time of the accident and was struck by defendant's car which was being driven northeasterly on Fairgrounds road. She testified that she drove her car southwesterly on Fairgrounds road and parked it "over across the street from Davies store", towards town (southwest) from what would be the extension of the sidewalk on the south side of Hall street. We now quote from her testimony:

"Q. How much toward town from where that sidewalk would have been if extended across there?

"A. Well, when I got out of my car, I walked to the rear end of it and then I took about two steps and I looked across and saw Davies store. I knew I was in the right walk because it is right in line with their door, and I started across.

"Q. And when you got out of your car which side did you get out on?

"A. The left. The driver's seat side. I was alone.

"Q. That would not be on the curb side, would it?

"A. No.

"Q. Then when you started across, what did you do from the standpoint of observing traffic on the highway?

"A. I stopped at the rear end of my car and looked both ways and I didn't see a light either way of a car and then I took that step or two and sighted my distance to see that I was right and I started across looking to the left.

"Q. Why did you continually keep looking to the left?

"A. Well, I was walking that way. I was on that side of the road, that highway.

"Q. Would that curve have anything to do with it there? That curve in the highway?

"A. Why, sure.

"Q. What did it have to do?

"A. I was expecting someone to come around there.

"Q. How far had you proceeded when you were struck?

"A. Well, I don't know for sure. I didn't count them, but I don't think I had made but two or three steps.

"Q. I didn't mean in that respect. Had you gotten to the center of Fairgrounds Road when you were struck?

"A. No.

"Q. And did you see the car before it struck you? * * *

"A. I said no."

On rebuttal Mrs. Martin stated: "Well, I probably was walking fast. It was raining something terrible, but I know— Q. Were you running? A. I was not running."

Maurice Schultz, a boy 14 years old, testified that he had seen the accident and that plaintiff had not reached the yellow line when she was struck by defendant's car. Mr. M. E. Amort, a witness called by the defendant, testified that he was driving his car about 150 to 200 feet behind defendant's car and had followed him some 400 feet before the accident; that defendant

was not going over 20 miles per hour; that it was dark and raining hard; that plaintiff was about 7 or 8 feet from the curb when he first saw her by the headlights of an automobile coming from the opposite direction; and that plaintiff "was at the yellow line or possibly one step over" when she came in contact with defendant's car. He further testified as follows:

"Q. How far did you travel after you first saw her before the collision occurred by which she passed out of sight? I will put it that way, from you. In other words, how far did you travel while you could see her?

"A. Before she passed out of sight in front of the car?

"Q. Yes, I understand you to say she went in front of the car and then you saw her again over on the other side, but you saw her and then she went out of sight and you saw her again, as I understand your testimony. When you first saw her there, how far did you travel while you could still see her?

"A. Oh, probably 50 feet. 75 maybe. As much as you could go on that. I would say 20 miles an hour and a person got 5 or 6 steps.

"Q. She took probably 5 or 6 steps during the time that you saw her, did she?

"A. That is right."

The testimony of Gerald S. Harrison, husband of defendant and driver of the car involved in the accident, was taken by deposition. He stated that his wife was riding with him in the car; that it "was dark, raining; lights were on and were on dim"; that he was driving between 15 and 20 miles per hour; that he did not see the plaintiff; that "the only way we knew we had hit something was when we felt the impact in the car"; and that he did not "know for sure whether or not she (plaintiff) was in the crosswalk or not; it was so close."

Mrs. Stasha Hollis stated that she noticed plaintiff standing "at the back of her car on the street side, and she had started out and she got approximately, I would say, to the yellow line or the center and she was struck." Mr. O. H. Hilfiker, one of defendant's witnesses, testified that he saw plaintiff at the time of the impact. He gave the following testimony:

"Q. Could you go down—step down to this board, Mr. Hilfiker, with a piece of chalk indicate to the jury where she was as you saw her.

"A. Well, from where I was it looked more in here. (Indicating.)

"Q. Now, make an 'x' there, Mr. Hilfiker. Now that 'x'—

"A. It could be a little closer to the yellow line than that, but it was more in line with this store here and I could see—and there was some cars parked along here and others over here."

This last testimony had reference to a chart drawn on a blackboard showing the location of the accident, which blackboard is not a part of the record in this court. There was other "here and there" testimony having reference to this chart, and it is unintelligible without the blackboard and the accompanying explanation. We do not know whether such evidence was favorable or unfavorable to plaintiff, but in view of the fact that the verdict was in her favor we are justified in assuming that it was not detrimental to her.

At the close of plaintiff's case in chief defendant moved for an involuntary nonsuit on the ground "that it appears affirmatively from the plaintiff's evidence that she herself was guilty of contributory negligence as a matter of law. In this connection she stated that she did not look in crossing the street; that she had looked to the north, but she had not looked in the other

direction, I mean. She did not see the car before it struck her. We believe under the law there is an affirmative duty on any person crossing the street when it is dark, raining hard, and a busily traveled street, as she testified it was, to look before crossing''. And at the close of the case the defendant moved for a directed verdict in favor of defendant on the ''ground that the evidence incontrovertibly shows that the plaintiff, to say the least and as a matter of law, was guilty of contributory negligence in placing herself in the position in which she placed herself at the time this accident occurred.'' These two motions were denied. Defendant asserts that they should have been granted and that the court should have held that plaintiff was guilty of contributory negligence as a matter of law.

Neither the motion for an involuntary nonsuit nor the motion for a directed verdict was based on the ground that plaintiff was not in an unmarked crosswalk at the time she was struck by defendant's automobile. There was no marked crosswalk. Both plaintiff and defendant, and apparently the circuit court, were of the impression that there was an unmarked crosswalk at or near the place where the mishap occurred. The plaintiff and defendant did not, however, agree as to its location. In our opinion there was no crosswalk, marked or unmarked, and therefore in determining whether plaintiff was, as a matter of law, guilty of contributory negligence, we shall assume that there was no crosswalk. The matter of the crosswalk will be discussed at greater length when we consider the second question presented by this appeal.

Section 115-340, O. C. L. A., as amended by § 8 of chapter 428, Oregon Laws 1941, which was in effect when the accident occurred, provides in part as follows:

''5. Every pedestrian crossing a roadway at any

point other than within a marked or unmarked crosswalk shall yield the right of way to vehicles upon the roadway. Local authorities in their respective jurisdictions shall have authority to prohibit by ordinance any pedestrian crossing any street or highway at any place other than at a marked or unmarked crosswalk.

"6. The provisions of this section shall not relieve the driver of a vehicle or the pedestrian from the duty to exercise due care."

There was no ordinance of the city of Salem at the time referred to prohibiting "any pedestrian crossing any street or highway at any place other than at a marked or unmarked crosswalk."

■■ In passing upon defendant's motions for a nonsuit and for a directed verdict, we must consider the evidence in the light most favorable to plaintiff. It is elementary law that contributory negligence becomes a question of law when, and only when, from the facts, reasonable men can draw but one inference and that inference points unerringly to the negligence of plaintiff contributing to the injury. In all other cases the question of contributory negligence is one of fact for the jury. The question whether plaintiff has been guilty of contributory negligence which will defeat his recovery for injuries sustained in an accident is generally one for the jury. *Shaefer v. Investors' Company*, 150 Or. 16, 41 P. (2d) 440, 97 A. L. R. 213; *Keys v. Griffith*, 153 Or. 190, 55 P. (2d) 15; *Dixon v. Raven Dairy*, 158 Or. 186, 75 P. (2d) 347; 38 Am. Jur., Negligence, 1052, § 348.

■ The statutory provision hereinbefore quoted governing the crossing of a roadway at a point other than at a crosswalk is not a prohibition against crossing a roadway other than at a crosswalk. *Genola v. Barnett*, 14 Cal. (2d) 217, 93 P. (2d) 109. It imposes upon

the pedestrian the duty of yielding the right of way, but does not relieve the driver of a vehicle of the duty to exercise due care. In 2 Blashfield, Cyclopedia of Automobile Law and Practice, Perm. Ed., 488, et seq., § 1451, under the heading, "Crossing at Other Places Than Intersections in General", we find the following statement:

"In the absence of statute or ordinance regulating the matter, pedestrians are entitled to free and unobstructed passage across a street at any and all places, without being confined to particular crossings. It is not, therefore, necessarily negligent for a pedestrian to go across a street at a place other than an intersection or a regular crossing * * *.

"In crossing a street between intersections, a pedestrian must exercise that care which an ordinarily prudent person would exercise in making a similar attempt, and the general rule is that, in attempting to cross a city street at a point between intersections or at other places than the regular crossing, the duty rests upon a pedestrian, in the exercise of ordinary care, to use a greater degree of caution than if he were at an established crossing, or care commensurate with the danger arising from the fact that drivers of vehicles may anticipate less travel on foot at such places, especially if his view is to any extent obstructed by standing automobiles or any other objects."

See in this connection *DeWitt v. Sandy Market, Inc.*, 167 Or. 226, 115 P. (2d) 184.

■ In the instant case plaintiff testified that before starting across the street she looked in both directions; that she did not see the lights of any approaching cars; that she continued to look to the left; and that she had not yet reached the center of the street when she was struck by the defendant's car. *White v. Davis*, 103 Cal. App. 531, 284 P. 1086, lays down the following

salutary rule as a guide in determining whether the question of contributory negligence is one of law or of fact:

"* * * Where the injured party fails to look at all or looks straight ahead without glancing to either side, or is in a position where he cannot see, or, in other words, where he takes no precaution at all for his own safety, it is usually a question for the court. Where he looks but does not see an approaching automobile, or, seeing one, erroneously misjudges its speed or distance, or for some other reason assumes he could avoid injury to himself, the question is usually one for the jury."

The foregoing rule has been approved and followed in many later cases in California. See *Genola v. Barnett,* supra; *Young v. Tassop,* 47 Cal. App. (2d) 557, 118 P. (2d) 371, and cases therein cited; *Keys v. Griffith,* supra.

■ Whether plaintiff used the degree of care for her own safety which an ordinarily prudent person would have used in the same place and under the same conditions was, in our opinion, a question for the jury and not for the court. See in addition to authorities last above cited: Note, 79 A. L. R. 1087; 10 Blashfield, Cyclopedia of Automobile Law and Practice, Part 2, Perm. Ed., 69, et seq., § 6628.

■■ Defendant's last assignment of error is based upon her exception to the following instruction of the court:

"Now, our statute defines a 'cross walk' as that portion of a roadway at an intersection included within the connections of the lateral lines of the sidewalk on opposite sides of the street or highway measured from the curbs or, in the absence of curbs, from the edges of the traveled roadway;

or any portion of a roadway at an intersection or elsewhere distinctly indicated for pedestrian crossing, by lines or other markings on the surface of such roadway conforming in design to standards prescribed by the State Highway Commission.''

Her exception thereto was as follows:

''Now, we believe—or we submit, your Honor, that the definition of a cross walk to be applicable to the evidence in this case would include a direction by the court under the statute that the cross walk where unlined, and it is admitted and there is no evidence of any lining here, would require the court to declare the cross walk to be the extension of the southerly sidewalk on Hall street across Fairgrounds Road, the intersecting street involved in this action.''

The court in its instruction defined ''crosswalk'' in the language of the statute. § 115-301 (t), as amended by chap. 423, § 1, Oregon Laws 1941.

Hall street, as hereinbefore stated, intersects but does not cross Fairgrounds road; therefore there could not be any ''connections of the lateral lines of the sidewalk on opposite sides of the street [Fairgrounds road]'', and consequently there was no unmarked crosswalk across Fairgrounds road. See *DeWitt v. Sandy Market, Inc.*, supra, for a construction of this statute. The court therefore did not err in refusing to modify the instruction as requested by the defendant by defining the location of the crosswalk.

The instruction given by the court was abstract but defendant did not object to it on that ground. We have read the entire transcript and are of the opinion that defendant was not prejudiced by the giving of this instruction.

The judgment appealed from is therefore affirmed.