421 P.2d 149

**John L. PIERCE and Helen M. Pierce, husband and wife, Plaintiffs-Appellants,**

v.

**Leona BARENBERG and Clarence Barenberg, wife and husband, Defendants-Respondents.**

No. 9702.

Supreme Court of Idaho.

Dec. 16, 1966.

Weeks & Davis, Nampa, for appellants.

Elam, Burke, Jeppesen & Evans, Boise, for respondents.

TAYLOR, Justice.

In 1962, the plaintiffs (appellants) John L. Pierce and Helen M. Pierce, husband and wife, resided at 2911 State Street in the City of Boise. They were "the operators" of what was known as the "State Street Cafe," which was located next to and east of their residence. Both the residence and the cafe were located on the south side of State Street, which runs in a generally east-west direction. Plaintiffs had resided at that location and operated the cafe for a period of 12 years. Immediately west of plaintiffs' residence, and adjacent to the intersection of State Street and 30th Street was located a corner grocery store. Across State Street to the north and opposite the residence and store was located a service station known as Scotchman's Corner, at the intersection of State Street and Lemp Street. Adjacent to and east of the service station was located a bicycle shop and the M & W Market. See plat, defendants' exhibit C.

Scale: 1" = 12'

Defendant's Exhibit C

About 8:00 o'clock on the evening of December 17, 1962, plaintiff John L. Pierce went to the corner grocery to get money change for use in his restaurant business. Not finding the required change available there, he undertook to cross the street to the north to get the change from the service station or the market. He had reached a point near the north curb line when he was struck by an automobile driven by defendant (respondent) Leona Barenberg, who was accompanied by her husband Clarence Barenberg (defendant-respondent).

Hereinafter we use the word "plaintiff" as referring to John L. Pierce, and "defendant" as referring to Leona Barenberg.

State Street was a four-lane through highway, also known as State Highway 44. The two westbound lanes were divided from the two eastbound lanes by a divider strip about four feet wide. Each traffic lane was approximately 11 feet in width. At some undetermined distance east of the intersection of 30th Street and State Street there were, at the time of the accident, two parallel white lines painted across the eastbound lanes. On the east side of the westernmost white line the word "School" was painted across the traffic lanes, and adjacent to and west of the easternmost line, the term "Xing" was painted across the traffic lanes. Some six or eight feet laterally along State Street to the east a similar white line was painted across the two westbound traffic lanes and parallel therewith, and farther east was another white line across the westbound lanes. The word "School" was also painted across the westbound lanes immediately west of the easternmost line and the term "Xing" was painted across the westbound lanes adjacent to and east of the westernmost line. The distance between these parallel lines and their location in relation to adjacent streets or objects was not established definitely by the evidence. We have located and drawn them on defendants' exhibit C as accurately as the record permits.

The evening of December 17, 1962, at the time of the accident, was a drizzly, dark night and vehicles were moving on the highway with lights on. According to plaintiff's testimony, he crossed the westbound traffic lanes on the east side of the easternmost white line extending across those lanes. He stopped on the dividing strip and looked to his right; observed defendant's car approaching from the east "approximately a block" away, "where 28th Street comes in"; he then proceeded across the westbound lanes on the west side of the westernmost white line extending across those lanes. He was nearly across the street, three or four feet from the north side, when suddenly "all I could see was lights." He started to "jump" but was struck before he had time to do so.

Defendant Leona Barenberg testified she was driving about 25 miles per hour in the right-hand westbound lane. Suddenly she saw plaintiff run out into the street right in front of her car, "he appeared to be running," and "immediately I saw him and I put on the brakes and I hit him." She estimated that she was about 20 to 25 feet from plaintiff when she first saw him. As a result of the impact plaintiff was rolled up over the hood and against the windshield of the car. He was carried forward by the car a short distance and slid off as the car stopped.

Defendant Clarence Barenberg corroborated Leona's testimony and further testified:

"I was looking out the front with her and she was driving watching the road and it was awfully hard to see, it was rainy, cloudy and getting dark, and the first thing I looked out and I started to holler, look out. I started to tell her, watch out, there is a man there. I didn't get that done until the time I said watch out, why she put her foot on the brake and about that same time, why, we hit"; and further testified that

when the car stopped he jumped out and ran over to the plaintiff and covered him

with his coat; and that plaintiff was wearing dark clothes.

There was no issue as to defendant's headlights being on; plaintiff himself testified to that fact.

The cause was tried to a jury and resulted in a verdict and judgment in favor of the defendants, from which plaintiffs prosecute this appeal.

■ One of the principal issues raised by the assignments of error is the availability to plaintiffs of the doctrine of the last clear chance. They assign as error the refusal of the court to give to the jury their requested instruction embodying that doctrine. The only evidence as to the speed of defendant's car was that given by the defendants—about 25 miles per hour. There was no evidence of a greater speed. The darkness, weather conditions, dark road, and dark clothing worn by plaintiff, make the conclusion quite inescapable that defendant did not see plaintiff in time to avoid the collision. At 25 miles per hour defendant's car would reach plaintiff in less than one second from the time she testified she first saw him.

"[The last clear chance] doctrine implies thought, appreciation, mental direction and lapse of sufficient time effectually so to act as to save another from injury to which he has negligently exposed himself. It is not applicable where the emergency is so sudden that there is no time to avert the accident. In the case here, the act which created the peril occurred at practically the same time as the accident in that only six-tenths to seven-tenths of a second, mathematically calculated, elapsed from the time the Laidlaw boy's peril became apparent to appellant Barker before the accident; under the circumstance appellants did not have a last clear chance to avoid the accident. The last clear chance must be a clear one." Laidlaw v. Barker, 78 Idaho 67, 74, 297 P.2d 287, 291 (1956). The court properly refused to give the requested instruction. McIntire v. Engle, 90 Idaho 63, 408 P.2d 159 (1965); Kuhn v.

Dell, 89 Idaho 250, 404 P.2d 357 (1965); Schwandt v. Bates, 88 Idaho 131, 397 P.2d 244 (1964); Allen v. Idaho Power Company, 84 Idaho 309, 372 P.2d 80 (1962); Hale v. Gunter, 82 Idaho 534, 356 P.2d 223 (1960); Lallatin v. Terry, 81 Idaho 238, 340 P.2d 112 (1959); McIntire v. Oregon Short Line R. R. Co., 56 Idaho 392, 55 P.2d 148 (1936); Fabling v. Jones, 108 Colo. 144, 114 P.2d 1100 (1941); Menke v. Peterschmidt, 246 Iowa 722, 69 N.W.2d 65 (1955); Roland v. Terryland, Inc., 221 Ark. 837, 256 S.W.2d 315 (1953); Gosney v. May Lumber & Coal Co., 352 Mo. 693, 179 S.W.2d 51 (1944); Johnson v. Yellow Cab Co. of D. C., Inc., 93 A.2d 566 (D.C. Mun.App.1953); Clodfelter v. Carroll, 261 N.C. 630, 135 S.E.2d 636 (1964); Cook v. Shoulder, 200 Va. 281, 105 S.E.2d 860 (1958); Juergens v. Front, 111 W.Va. 670, 163 S.E. 618 (1932); Detornos v. American Employers Insurance Co., 170 So.2d 211 (La.App.1964); Wilde v. Kelly, 160 So.2d 713 (Fla.App.1964).

■ Plaintiffs assigned as error the refusal to give their requested instruction No. 1, which was as follows:

"You are instructed that it is the law of the State that when a person is operating a motor vehicle upon the public highway at night time he or she must proceed at such a rate of speed that he may be able to ordinarily stop short of an object appearing in the radius of his or her lights."

This request was covered by the court's instructions 18 and 22 which gave to the jury I.C. §§ 49–701(a) and (c), and 49–735. Hawkins v. Chandler, 88 Idaho 20, 396 P.2d 123 (1964).

■ Plaintiffs also assigned as error the refusal of the court to give their requested instruction No. 4. The proposed instruction was taken from the Manual on Uniform Traffic Control Devices, Section 2B–21, p. 138 (defendants' exh. B) and was as follows:

"You are instructed that 'stop lines' are solid white lines not less than twelve inches nor more than twenty-four inches

in width extending across all approaching lanes of traffic. Drivers of vehicles are required to stop behind such 'stop lines' in compliance with a stop sign, traffic signal, officer's direction, or other legal requirement."

The request presupposes a legal requirement on the part of drivers to stop behind such lines. Here there was no evidence that the lines in the vicinity of the collision were "stop lines." There was no "stop sign, traffic signal, officer's direction, or other legal requirement" to stop, present in that area. The request was properly refused.

■ Instruction No. 21 was as follows:

"Section 49–516, Idaho Code, defines two types of cross walks, unmarked cross walks and marked cross walks. In subsection (a) an unmarked cross walk is defined as follows:

" 'That part of a roadway at an intersection included within the connections of the lateral lines of the sidewalks on opposite sides of the highway measured from the curbs, or in the absence of curbs, from the edges of the traversable roadway.'

"In subsection (b) a marked cross walk is defined as follows:

" 'Any portion of a roadway at an intersection or elsewhere distinctly indicated for pedestrian crossing by lines or other markings on the surface.'

"You are instructed that under the facts of this case the accident did not occur within an unmarked cross walk. Whether or not this accident occurred within a marked cross walk is for you to determine."

Plaintiffs contend the evidence presented a question for the jury as to whether the accident occurred within an unmarked crosswalk. We observe from the foregoing statutory definition of unmarked crosswalk, and the map—defendants' exhibit C—that there was no unmarked crosswalk in the area where plaintiff crossed the highway. Thirtieth Street did not extend to the north

on the opposite side of State Street. Hence, there could be no part of the roadway "included within the connections of the lateral lines of the sidewalks on opposite sides of the highway." Langlois v. Rees, 10 Utah 2d 272, 351 P.2d 638 (1960); Martin v. Harrison, 182 Or. 121, 180 P.2d 119, 186 P.2d 534 (1947); Griffin v. Odum, 108 Ga. App. 572, 133 S.E.2d 910 (1963). In addition plaintiff did not claim to have crossed at the intersection of 30th and State Streets. He testified he crossed a short distance to the east of that intersection.

■ In addition to the statutory definition of "marked crosswalk" given to the jury in instruction No. 21, supra, the court gave further detailed description of a marked crosswalk taken from the Manual on Uniform Traffic Control Devices, Section 2B–22 (defendant's exhibit B). (This manual was adopted by the Idaho Board of Highway Directors, giving it official sanction in this state). See Howard v. Missman, 81 Idaho 82, 337 P.2d 592 (1959). By this provision of the manual, marked crosswalks are required to be defined by two parallel white lines across the roadway, one line on each side of the crosswalk. Plaintiff contends this instruction was erroneous because the manual requirement of lines on both sides of a marked crosswalk is in conflict with the statutory definition given in instruction 21, supra, and that the authority given the highway department to adopt such a manual requires that its specifications be "consistent with the provisions of this act." I.C. § 49–601.

Plaintiff calls attention to the fact that the statute permits such a crosswalk to be designated by "other markings on the surface," and to the testimony of John Boesel, state highway engineer, that in rural areas where there are no signals, crosswalks are marked by "two-foot wide hash marks across the pavement." Any inconsistency between the manual and the practice of the highway department, or between the manual and the statute, would not be grounds for reversal in this case, because there was no crosswalk in the area where

plaintiff crossed the highway, marked on the surface of the roadway in either manner. Furthermore, the area where the accident occurred was not a rural area.

■ Plaintiffs also assign as error the overruling of their objections to the testimony of highway engineer John Boesel. The witness testified that the white lines across the respective east and westbound lanes of traffic on State Street in the area where the accident occurred, and marked "School" "Xing" were warnings of school crossings ahead. Plaintiffs contend the testimony would constitute a lay opinion as to either a question of law, or the ultimate fact to be determined by the jury. We do not agree. The witness was qualified as an expert on traffic markings authorized and placed by the highway department. Moreover, the purpose of the lines—to indicate a school crossing ahead—was marked upon the pavement adjacent to the lines. The testimony was properly admitted to assist the jury in determining the ultimate issue as to whether the accident occurred within a marked crosswalk.

■ Plaintiffs further assign as error the ruling of the court permitting defendant's witness Earl Faught to testify. In the course of pretrial proceedings, the parties through their counsel, stipulated that each party would furnish to the other the names and addresses of all persons each may call as witnesses at the trial within a specified time, with leave to add additional names of witnesses later discovered, but in no case later than 20 days before trial. The name of Earl Faught did not appear upon the list furnished plaintiffs by defendants. Plaintiffs objected, on that ground, to the witness being permitted to testify. After hearing counsel, the court ruled that it would permit the witness to testify, but if need be would allow plaintiffs additional time to meet his testimony. In response to this, plaintiffs' counsel requested and was granted a recess of ten to fifteen minutes to interview the witness. The trial then continued without further objection. The witness qualified as super-

intendent of traffic for the City of Boise. He testified that an electrically lighted signal had been installed at the intersection of 28th and State Streets about the 1st of December, 1963, about the time the jurisdiction of the city was extended to include the area involved, and that at that time the markings placed on the highway by the state had been left as they were. It does not appear that the plaintiffs were or could have been prejudiced by the ruling.

Judgment affirmed.

Costs to respondents.

McFADDEN, C. J., and McQUADE, SMITH and SPEAR, JJ., concur.