568 P.2d 411

William W. KAUFFMAN, Appellant,

v.

Bernice A. SCHROEDER, as Personal Representative of the Estate of Albert J. Schroeder, Deceased, Appellee.

No. 12665.

Supreme Court of Arizona, In Division.

July 6, 1977.

Sorenson, Esser & Moore by H. Jeffrey Coker, George Sorenson, Phoenix, for appellant.

Divelbiss & Gage by G. David Gage, Phoenix, for appellee.

STRUCKMEYER, Vice Chief Justice.

This is an action in negligence against William W. Kauffman for the wrongful death of Albert J. Schroeder. Jurisdiction is pursuant to Rule 47(e), A.R.S., Rules of the Supreme Court. Judgment of the Superior Court is reversed and this cause is remanded for a new trial.

Kauffman asserts that the evidence presented at trial left unclear whether decedent, a pedestrian, was inside an unmarked crosswalk when he was struck and killed by Kauffman's automobile and that the jury should have been instructed as to his duty when crossing a roadway at a place other than at a crosswalk. Kauffman's requested instruction, which consisted of the statute A.R.S. § 28–793(A), was refused because the trial judge concluded that the decedent was struck while in an unmarked crosswalk. On appeal, when an instruction is requested but not given, a reviewing court will view the evidence in a light most favorable to the person who offered it. *Trauscht v. Lamb,* 77 Ariz. 276, 278, 270 P.2d 1071 (1954).

On March 11, 1971, at approximately 7:50 p. m., decedent 70 years of age, was crossing 68th Street where it intersects with Monte Vista Drive in Scottsdale, Arizona, when he was fatally struck by a southbound vehicle driven by Kauffman. The intersection forms a "T" with 68th Street running north-south and Monte Vista running east-west, intersecting 68th Street from the west. At the time of the accident, there was no traffic devices or marked crosswalks. (See sketch adapted from Plaintiff's Exhibit # 1.)

The decedent was crossing 68th Street from east to west, north of Monte Vista. Testimony of the investigating officer placed the point of impact at 16 feet, 7 inches east of 68th Street's west curb and 21 feet north of the projected curbline of Monte Vista Drive. The point where decedent came to rest was 15 feet east of 68th Street's west curb and five feet, six inches north of the Monte Vista projected curbline. 68th Street at this point is 57 feet wide, with a dividing line located 23 feet from the west curb and 34 feet from the east curb. There is a street lamp at 68th Street where its west curb begins to curve toward the north curb of Monte Vista Drive.

Kauffman testified that he was traveling south on 68th Street, about three car lengths behind an automobile driven by Robin Saggo. Kauffman gauged his speed as approximately 25 to 30 miles per hour, the same rate of speed as the Saggo vehicle. The posted speed limit was 35 miles per hour. He testified that he did not see Schroeder until the decedent was directly in front of his vehicle. Other testimony established that the street lamp was illuminated and that both vehicles were being driven with their headlights on. Kauffman testified that decedent was walking about two car lengths north of the Monte Vista curb, with his head facing down. He stated that decedent was about four or five feet into his lane and directly in front of his vehicle when he first saw him. Kauffman also testified that appellee, the decedent's daughter-in-law and personal representative, was at the scene of the accident shortly after it happened and that she told him that the decedent had had close calls previously while crossing roads without paying attention to traffic.

Marjune Mears, a witness to the accident who was standing about 30 feet away, testified that the decedent was wearing dark clothing, that he was walking slowly, and that his head was bent down when he was struck. She also testified that it was dark and that she could not see clearly. Her estimate of the speed of the two vehicles was about 25–30 miles per hour. She stated that decedent was in the southbound lane, about a foot past the dividing line, when he was struck by the middle of Kauffman's car. Photographs of Kauffman's automobile showed a dent on the passenger side, near the middle.

██ Instructions must be viewed as a whole and not piecemeal, *Dubreuil v. Gardner,* 99 Ariz. 312, 314, 409 P.2d 23 (1965); the test being, upon the whole charge, whether the jury will gather the proper rules to be applied in arriving at the correct decision. *Arizona Public Service Co. v. Brittain,* 107 Ariz. 278, 281, 486 P.2d 176 (1971). It is also the rule that unless an issue is supported by the evidence, it is improper to instruct upon it. *Sax v. Kopelman,* 96 Ariz. 394, 396–97, 396 P.2d 17 (1964); *Brierley v. Anaconda Co.,* 111 Ariz. 8, 12, 522 P.2d 1085 (1974). It is not error for the court to refuse to give requested instructions adequately covered elsewhere by instructions which are given. *City of Phoenix v. Brown,* 88 Ariz. 60, 65–66, 352 P.2d 754 (1960).

██ We stated in *Sisk v. Ball,* 91 Ariz. 239, 371 P.2d 594 (1962):

"Violation of a statute enacted for the public safety is negligence per se, *Anderson v. Morgan,* 73 Ariz. 344, 241 P.2d 786 (1952), and when this theory is supported by the evidence, [a party] is entitled to have a properly worded instruction on this issue read to the jury. Of course, a violation of the statutory duty must be also a proximate cause of the injury to constitute actionable negligence. *Caldwell v. Tremper,* 90 Ariz. 241, 367 P.2d 266 (1961)." 91 Ariz. at 242, 371 P.2d at 595–96.

*See Orlando v. Northcutt,* 103 Ariz. 298, 300, 441 P.2d 58 (1968); *Brand v. J. H. Rose Trucking Company,* 102 Ariz. 201, 205, 427 P.2d 519 (1967). It is the duty of the court to instruct the jury on all phases of the law applicable to the facts developed at trial. *Young Candy & Tobacco Company v. Montoya,* 91 Ariz. 363, 367, 372 P.2d 703 (1962).

The question presented is whether decedent was struck while walking within an unmarked crosswalk. The trial judge concluded that he was, and refused to give A.R.S. § 28–793(A), as requested by Kauffman. That statute reads:

"A. Every pedestrian crossing a roadway at any point other than within a marked cross walk or within an un-marked cross walk at an intersection shall yield the right of way to all vehicles upon the roadway."

It is clear that the statute states the pedestrian's duty when crossing a roadway at a point other than at a crosswalk.

██ A crosswalk is defined in A.R.S. § 28–602(2)(a) as:

"That part of a roadway at an intersection included within the connections of the lateral lines of the sidewalks on opposite sides of the highway measured from the curbs or, in absence of curbs, from the edges of the traversable roadway."

The wording of this statute is also plain. For an unmarked crosswalk to exist, there must exist (1) an intersection, and (2) sidewalks on opposite sides of the highway.

██ While a "T" intersection is within the statutory definition of an intersection, *see* A.R.S. § 28–602(6), this does not necessarily mean that an unmarked crosswalk exists at such an intersection. An intersection is defined in part as the "area embraced within the *prolongation or connection* of the lateral curb lines * * *" (emphasis added), A.R.S. § 28–602(6); whereas an unmarked crosswalk is "That part of a roadway at an intersection included within the *connections* of the lateral lines of the sidewalks on opposite sides of the highway" (emphasis added), A.R.S. § 28–602(2), supra. Since the "T" intersection here did not have a sidewalk on the "opposite side" of the highway, there are no lateral lines to "connect" to each other in order to form an unmarked crosswalk. Although we can see no reason why the lateral lines of the sidewalks adjacent to a street which intersects with but does not cross another street should not be projected across that intersection to form an unmarked crosswalk, the Legislature has not so provided. We therefore hold that the intersection did not have unmarked crosswalks across 68th Street because there were no sidewalks opposite each other. Other jurisdictions interpreting like statutes are in agreement with us: *Griffin v. Odum,* 108 Ga.App. 572, 133 S.E.2d 910 (1963); *Pierce v. Barenberg,* 91 Idaho 354, 421 P.2d 149

(1966); *Martin v. Harrison,* 182 Or. 121, 186 P.2d 534 (1947); *Langlois v. Rees,* 10 Utah 2d 272, 351 P.2d 638 (1960). *Contra, Fan v. Buzzitta,* 42 A.D.2d 40, 344 N.Y.S.2d 788 (1973).

As the Utah court said in *Langlois v. Rees,* supra:

"The statutory definition implies that there is an unmarked crosswalk only if a street's sidewalk (or the edge of the traversible roadway) is intersected and continues on." 10 Utah 2d at 275, 351 P.2d at 641.

■ Having decided that there was no basis for the trial judge to conclude that the decedent was in an unmarked crosswalk when struck by Kauffman's vehicle, we must also decide whether his refusal to instruct the jury on A.R.S. § 28–793(A) was reversible error. We think it was prejudicial error to fail to instruct the jury pursuant to § 28–793(A), supra, since the jurors were not told that it was the decedent's duty to yield the right of way to oncoming traffic. The instructions which were given did not cover decedent's duty, *City of Phoenix v. Brown,* supra, nor could the jury understand the proper rule to be applied from the content of the instructions which were given. *Arizona Public Service Co. v. Brittain,* supra. Violation of a statute enacted for the public safety is negligence per se, and when this theory is supported by the evidence, a party is entitled to have a properly worded instruction on this issue read to the jury. *Sisk v. Ball,* supra.

Reversed and remanded for a new trial.

HAYS and HOLOHAN, JJ., concur.