**Juliann M. GARRETT and Wendell Garrett, Plaintiffs and Appellants,**

v.

**Connie Lynn NAGEL and John G. Nagel, Defendants and Appellees.**

**Civ. No. 870093CA.**

Court of Appeals of North Dakota.

Jan. 8, 1988.
Review Denied Feb. 2, 1988.

Vinje & Engelman, P.C., Mayville, for plaintiffs and appellants; argued by Damon Anderson, of counsel.

Zuger & Bucklin, Bismarck, argued by Thomas O. Smith, for defendants and appellees.

PER CURIAM.

Juliann and Wendell Garrett appeal from a judgment dismissing their personal injury action against John and Connie Nagel. They also appeal from the trial court's order denying their alternative motions for judgment N.O.V. or for a new trial. We affirm.

On March 17, 1983, Juliann traveled with her husband and three children from their home in Mayville to attend a basketball tournament in Bismarck. They secured a room at the Kirkwood Motor Inn, which is located in South Bismarck along the west side of Third Street.

Indiana Avenue is a two-lane street running east and west, which intersects with South Third Street to form a "T" intersection. On March 18, 1983, Juliann, with her two daughters and a friend, walked from the motel north along the west side of Third Street. After crossing Indiana Avenue they proceeded east across Third Street. At about that time Renee Welle was driving a Ford Bronco east on Indiana Avenue. She stopped at the intersection of Indiana Avenue and South Third Street and proceeded to make a left turn onto Third Street. She then noticed Juliann and her companions crossing Third Street and stopped her vehicle in the center lane of Third Street, allowing them to cross a few feet in front of her vehicle. At about this time defendant Connie Nagel was driving north on Third Street, and as she proceeded in the right lane to drive past Renee's vehicle she struck Juliann, severely injuring her.

The Garretts filed a negligence action against the Nagels. The jury returned a verdict finding that Juliann's damages were proximately caused by negligence in the following percentages: the plaintiff, Juliann—80 percent; the defendant, Connie —5 percent; Renee, driver of the Ford Bronco and a nonparty,—15 percent. In accordance with that verdict and pursuant to Section 9–10–07, N.D.C.C., the trial court entered a judgment awarding no damages and dismissing the action on its merits.

■ The trial court determined that there was a crosswalk in the vicinity of the accident, but it instructed the jury that, as a matter of law, the accident did not occur in the crosswalk. The Garretts assert that

the question of whether the accident happened in the crosswalk should have been decided by the jury. We hold that the trial court did not err in its instruction, because at the time of this accident there was no east/west crosswalk on the north side of the Indiana and Third Street intersection.

The term "crosswalk" is defined under subsection 39-01-01(10), N.D.C.C.:

> " 'Crosswalk' means that part of a roadway at an intersection included within the connections of the lateral lines of the sidewalks on opposite sides of the highway measured from the curbs, or, in the absence of curbs, from the edges of the traversable roadway; or any portion of a roadway at an intersection or elsewhere distinctly indicated for pedestrian crossing by lines or other markings on the surface."

The parties concede that there was no marked crosswalk in the vicinity of the accident. For an unmarked crosswalk to exist the foregoing definition unambiguously requires that there must be an intersection and that there must be sidewalks at the intersection on opposite sides of the highway from which to connect their lateral lines. At the time of the accident there was no sidewalk on the east side of Third Street running in an east/west direction at the Indiana Avenue and Third Street intersection. Consequently, there were no lateral sidewalk lines on the east side of Third Street to connect with the west side to form an unmarked crosswalk.

Several jurisdictions have construed similar statutes in accord with our interpretation of subsection 39-01-01(10), N.D.C.C., in this case. *Kauffman v. Schroeder*, 116 Ariz. 104, 568 P.2d 411 (1977) (and cases cited therein); *Pierce v. Barenberg*, 91 Idaho 354, 421 P.2d 149 (1966); *Griffin v. Odum*, 108 Ga.App. 572, 133 S.E.2d 910 (1963); *Langlois v. Rees*, 10 Utah 2d 272, 351 P.2d 638 (1960), *Martin v. Harrison*, 182 Or. 121, 186 P.2d 534 (1947). *Contra Fan v. Buzzitta*, 42 A.D.2d 40, 344 N.Y.S. 2d 788 (1973). We believe that the rationale of the Arizona Supreme Court in

*Kauffman, supra,* in construing a similar Arizona statutory provision, is applicable to this case:

> "While a 'T' intersection is within the statutory definition of an intersection, *see* A.R.S. § 28-602(6), this does not necessarily mean that an unmarked crosswalk exists at such an intersection.... An unmarked crosswalk is 'That part of a roadway at an intersection included within the *connections* of the lateral lines of the sidewalks on opposite sides of the highway' (emphasis added), A.R.S. § 28-602(2), supra. Since the 'T' intersection here did not have a sidewalk on the 'opposite side' of the highway, there are no lateral lines to 'connect' to each other in order to form an unmarked crosswalk." 568 P.2d at 413.

We hold that the trial court did not err in instructing the jury that the accident did not occur in a crosswalk.

The Garretts also assert that the trial court erred in not permitting Norman Evans, a State Highway Patrol Officer, to testify as an expert on the point of impact.

During the trial two eyewitnesses testified with regard to the point of impact. Their testimony on that issue was consistent, both witnesses placing Juliann in approximately the same location when she was hit by Connie's vehicle. Evans's testimony was based upon an investigation of the accident many months after it had occurred. Evans did not interview the eyewitnesses to the accident, but instead relied upon interviews with the investigating police officers, written statements of the eyewitnesses, photographs, and a survey of the scene.

During direct examination by plaintiffs' counsel, Patrolman Evans gave the following testimony, without objection by defense counsel:

> "Q. And what is your opinion relative to where the incident occurred in relationship to the intersection at Indiana and Third Street?
>
> "A. The accident occurred right near the intersection of Indiana Avenue and

Third Street approximately twenty feet north of the east corner of the intersection."

Later, in chambers, defendants' counsel asserted that he would object if Evans "is going to try to determine the point of impact." A lengthy discourse followed between counsel and the court regarding Evans's qualifications as an accident reconstruction expert. During the chamber discussion the trial court stated that, in the court's opinion, Evans had already testified on the point of impact without objection by defendants' counsel. The trial court ultimately determined that Evans was qualified to testify as an expert on such matters as braking distances and speed but that Evans would not be allowed to testify further with regard to the point of impact.

The use of expert opinion evidence as to the point of impact has had a mixed reception by the courts. See Annot. *Admissibility of opinion evidence as to point of impact or collision in motor vehicle accident case,* 66 A.L.R.2d 1048 (1959). On more than one occasion the North Dakota Supreme Court has held that expert testimony on the point of impact is inadmissible because the jury, as trier of fact, is equally qualified to make its own determination on that matter. *Bischoff v. Koenig,* 100 N.W. 2d 159 (N.D.1959); *Fisher v. Suko,* 98 N.W.2d 895 (N.D.1959); *see also Spielman v. State,* 91 N.W.2d 627 (N.D.1958); *Kohler v. Stephens,* 74 N.D. 655, 24 N.W.2d 64 (1946).

■ The test for admission of expert testimony is whether or not such testimony will assist the trier of fact and whether or not the witness is qualified as an expert. *Patch v. Sebelius,* 349 N.W.2d 637 (N.D. 1984). The determination of whether or not to admit expert testimony rests within the sound discretion of the trial court, and that determination will not be reversed on appeal unless the court has abused its discretion. *South v. National Railroad Passenger Corp.,* 290 N.W.2d 819 (N.D.1980).

*See also Stein v. Ohlhauser,* 211 N.W.2d 737 (N.D.1973).

■ We agree with the trial court that Evans's testimony that the accident occurred "approximately twenty feet north of the east corner of the intersection" was, in effect, a statement of the point of impact. Any further testimony by Evans in this regard would have been merely cumulative. In addition, two persons gave eyewitness testimony placing Juliann in the same general location when the accident occurred. Officer Evans's testimony, however, was based only upon an investigation conducted many months after the accident and following substantial alterations to South Third Street. We are not convinced that, under these circumstances, the trial court abused its discretion in ruling that Patrolman Evans would not be allowed to further testify with regard to the point of impact.

■ The Garretts assert that the trial court also erred in refusing to admit an investigating officer's written report of the accident. The report was offered into evidence by the Garretts solely for purposes of showing inconsistent statements of witness Renee Welle regarding whether or not Juliann and her companions were in the crosswalk at the time of the accident. They also assert that the trial court erred in failing to strike an answer given by Police Officer Robert Randall regarding whether the accident occurred in a crosswalk. In view of our conclusion that there was no crosswalk in the vicinity of the accident, we hold that the trial court's refusal to admit this evidence, if error, was harmless.

■ The Garretts assert that the trial court erred in failing to exclude alleged habit evidence. Defense counsel, during cross examination, asked Juliann various questions about previously crossing Third Street. No objection was made to this testimony until after those questions had been asked and answered and then the objection was based solely on grounds of relevancy without any mention to the trial

court that impermissible "habit evidence" was involved.[1] By failing to make an appropriate and timely objection, counsel did not preserve this issue for review on appeal.

■ The trial court instructed the jury that violations of statutory rules of the road, including speed limits, are evidence of negligence. The Garrets assert that the trial court erred in giving this instruction because violation of a statutory speed limit should constitute negligence per se rather than mere evidence of negligent conduct. In support of their position the Garretts cite *Hillius v. Wagner*, 152 N.W.2d 468, 470 (N.D.1967), wherein the North Dakota Supreme Court stated that violations of statutory rules of the road "in cases not involving speed limits" are evidence of negligence and not negligence per se. The reference to violations of speed limits in the *Hillius, supra,* opinion is merely dicta, however, because the case did not involve a violation of speed limit rules. Furthermore, the law of that case, as set forth in the syllabus, states that violation of a statutory rule of the road is evidence of negligence; the syllabus text does not except a speed limit violation from the rule. Directly on point is the earlier case of *Erdahl v. Hegg*, 98 N.W.2d 217, 219 (N.D.1959), in which the North Dakota Supreme Court stated at paragraph 7 of the court's syllabus:

> "The violation of a statute or ordinance which declares that speed in excess of a certain limit is prima facie unlawful is not negligence as a matter of law, but only evidence of negligence."

We conclude that the trial court did not err in instructing the jury that violations of rules of the road, including speed limits, are evidence of negligence.

The Garretts have similarly raised several other objections to the jury instructions. It is well settled that jury instructions must be considered as a whole and if, when

so considered, they fairly and adequately apprise the jury of the law, they are sufficient even though parts of them standing alone may be insufficient. *Benedict v. St. Luke's Hospitals*, 365 N.W.2d 499 (N.D. 1985). The instructions, viewed as a whole, fairly and adequately apprised the jury of the law in this case. We are not convinced that error occurred in the jury instructions given by the trial court.

The Garretts assert that the jury's award of damages was "wholly inadequate requiring a new trial." The jury found that Juliann's damages were proximately caused 80 percent by her own negligence, 15 percent by Renee Welle's negligence, and 5 percent by Connie Nagel's negligence. Section 9–10–07, N.D.C.C., precludes an award of damages to a claimant whose negligence is as great as the defendant's. Therefore, Juliann was not entitled to receive any award of damages, and the trial court properly entered judgment awarding no damages. In view of the jury's liability determination, its determination regarding the *amount* of damages became irrelevant, and we need not further consider this issue.

The Garretts also assert that the trial court erred in refusing to grant their alternative motion for judgment N.O.V. or for a new trial.

■ A motion for judgment N.O.V. is properly denied unless the evidence, viewed in a light most favorable to the party resisting the motion, shows that the moving party is entitled to judgment on the merits as a matter of law. *Hagert v. Hatton Commodities, Inc.*, 384 N.W.2d 654 (N.D. 1986). The motion must be denied unless the court finds that the evidence when so viewed compels but one conclusion as to the verdict with which no reasonable man could differ. *Staiger v. Gaarder*, 258 N.W.2d 641 (N.D.1977). We conclude that the evidence in this case presented for determination by the jury questions of fact

---

1. Under appropriate circumstances habit evidence of this nature is admissible. Rule 406,

N.D.R.Ev.; *Glatt v. Feist,* 156 N.W.2d 819, 828 (N.D.1968).

upon which reasonable men could differ. Accordingly, we hold that the Garretts were not entitled to judgment as a matter of law and that the trial court did not err in denying their motion for judgment N.O.V.

The decision to grant or deny a new trial rests within the sound discretion of the trial court and will not be set aside on appeal unless there is an affirmative showing of a manifest abuse of discretion. *Holte v. Carl Albers, Inc.*, 370 N.W.2d 520 (N.D.1985). There is evidence in this case to support the verdict, and we are not convinced that the trial court abused its discretion in denying the motion for a new trial.

The judgment and the order are affirmed.

VERNON R. PEDERSON, Chief Surrogate Judge, and EUGENE A. BURDICK, and DOUGLAS B. HEEN, Surrogate Judges, concur.

EUGENE A. BURDICK, Surrogate Judge, specially concurring.

While I fully subscribe to the foregoing opinion, I share the view of the Garretts that a violation of a statutory standard of conduct is an act of negligence or negligence per se. This was the view of the Supreme Court of this State in a series of early decisions. *George v. Odenthal*, 58 N.D. 209, 225 N.W. 323 (1929); *Johnson v. Mpls., St. Paul & S.S.M. Ry. Co.*, 54 N.D. 351, 209 N.W. 786 (1926). This position was reversed without rationale in *Renschler v. Baltzer*, 95 N.W.2d 574 (N.D. 1959), and the *Renschler, id.*, view was then followed in *Hillius v. Wagner*, 152 N.W.2d 468 (N.D.1967), and *Erdahl v. Hegg*, 98 N.W.2d 217 (N.D.1959). Because this Court of Appeals is guided by the most recent pronouncements of the Supreme Court, the *Hillius, id.*, holding must be followed until it is modified by the Supreme Court or by the Legislative Assembly.

In my view, the Legislative Assembly not only has authority to prescribe standards of care, but a failure to observe a statutory standard of care *is* an act of negligence. Whether or not the violation of a statutory standard of care is a proximate cause of an injury is a separate, distinct question. For example, the statutory rules of the road require a motorist to have a lighted red tail light while driving at night. Failure to have the lighted red tail light while driving at night is clearly an act of negligence and not merely evidence of negligence. However, that act of negligence cannot possibly be a causative factor in a head-on collision, but it is likely a crucial, causative factor in a rear-end collision with the deficiently lighted vehicle. By holding that the violation of a statutory standard of conduct is "evidence of negligence," the Supreme Court has confused actionable negligence with proximate cause. In applying the law of negligence, before liability can be imposed, the trier of fact must not only find the act of negligence upon which the claim is predicated. It must also find that the act of negligence was a proximate cause of the injury involved. *See* NDJI–CIVIL 115.