Argued October 29, 1957, reversed January 8, 1958

## CLARK *v.* STRAIN ET AL
319 P. 2d 940

*Roy Kilpatrick*, Canyon City, argued the cause and filed briefs for appellant.

*Walter J. Cosgrave*, Portland, argued the cause for respondents. With him on the brief were Maguire, Shields, Morrison & Bailey, Portland, and Orval D. Yokom, John Day.

Before PERRY, Chief Justice, and ROSSMAN, BRAND, WARNER and McALLISTER, Justices.

WARNER, J.

This is an appeal in an action resulting from a collision occurring in Grant County between a jeep pickup driven by the plaintiff, Clark, and a loaded log truck owned by the defendant Strain and driven by the defendant Hayes. The jury returned a verdict in favor of plaintiff in the amount of $10,000. From an order granting defendants a judgment notwithstanding the verdict, the plaintiff appeals.

The trial court gave as justification for its ruling "that the plaintiff by his own testimony shows he was contributorily negligent as a matter of law by driving at excessive speed, lack of control and defective brakes."

When directing a verdict or giving a judgment n.o.v., the evidence must be viewed in a light most favorable to the plaintiff. *Martin v. Harrison*, 182 Or 121, 137, 180 P2d 119, 186 P2d 534; *Edvalson v.*

*Swick*, 190 Or 473, 480, 227 P2d 183; *Shelton v. Lowell,* 196 Or 430, 435, 249 P2d 958.

■ Courts are seldom confronted with a record of fact justifying a holding that a plaintiff is guilty of contributory negligence as a matter of law. This is due in large measure to recognition of the elementary principle "that contributory negligence becomes a question of law when, *and only when,* from the facts, reasonable men can draw but one inference and that inference points unerringly to the negligence of plaintiff contributing to the injury. In all other cases the question of contributory negligence is one of fact for the jury." (Emphasis ours.) *Martin v. Harrison,* supra (182 Or 137); *Fox v. Royce,* 194 Or 419, 425, 242 P2d 190; *Whisler v. U. S. Nat. Bank of Portland,* 160 Or 10, 16, 82 P2d 1079.

Our examination of the facts respecting the plaintiff's speed, control and brakes does not unerringly point to negligence on the part of plaintiff and therefore these issues were properly determinable by the jury.

■ In the ordinary course, the foregoing conclusion would dictate a reinstatement of the judgment in favor of the plaintiff. Here, however, we are confronted with a record revealing a unique and unusual circumstance which we cannot judicially ignore. To do otherwise would produce an anomalous situation, abhorrent to all concepts of justice, i.e., a judgment resting upon an obviously unconstitutional verdict in that it was supported by only eight jurors. Such a verdict is not only contrary to the express provisions of Art VII, § 5 of the Oregon Constitution, but also to ORS 17.355(1), both of which require a minimum of three-fourths of the jury (or nine jurors) in civil cases.

The record shows that when the jury returned to

make its report, the foreman advised that they had reached a verdict. It was thereupon handed to the court and read to the jury. It revealed that they had found "in favor of the plaintiff and against the defendant in the sum of Ten Thousand Dollars." After this, the following proceedings were had:

The court: Ladies and gentlemen, is this your verdict?

Jurors: Yes.

The court: Have nine or more concurred? (Some of the jurors answered or nodded in the affirmative.)

The court, upon request of counsel for the defendants, then polled the jury. Of the first eight jurors interrogated, five answered "Yes" and three "No." Juror Chapman was ninth in the order of inquiry:

The court: Mrs. Chapman?

Mrs. Chapman: May I ask a question?

The court: Yes.

Mrs. Chapman: It is "yes" but not to the extent of damages.

The polling of the remaining three jurors was then continued and the court received three more affirmative replies, whereupon the following transpired:

The court: You have an 8 to 4 verdict. You do not have nine concurring. As I told you before, you have to have nine concur in this verdict; so I am going to send you back for further deliberations, I will give you back this form—

A juror: We had nine.

Another juror: We had nine in there.

The court: Wait a minute. Maybe I am confused. I thought that—

The judge again interrogated five of the jurors, other than Mrs. Chapman, each of whom reaffirmed their previous votes on the verdict. There then ensued this colloquy between the court and Mrs. Chapman:

"The Court: That is three Noes. And you told me—?

Mrs. Chapman: I said 'Yes' it was my verdict for the plaintiff; but then we voted on how much damages—

The Court: But you did not concur in the amount. Is that correct?

Mrs. Chapman: There was still 9 to 3 on the amount.

The Court: You have a 9 to 3 verdict on the amount?

Mrs. Chapman: Yes.

The Court: Did you concur on the amount?

Mrs. Chapman: I said 'No' on the amount, but there was still 9 to 3 on it.

The Court: No; that is not right. I want a 9 to 3 concurrence in this verdict for the plaintiff and in the amount, if that is what you intend. There are two things involved,—for the plaintiff or for the defendants; and if for the plaintiff, a 9 to 3 concurrence on the amount also; so I will send you back—

Mrs. Chapman: There was 9 to 3 on the amount.

The Court: Well, do you concur then on the amount?

Mrs. Chapman: Somebody else was for the amount, but the amount was for a certain amount.

The Court: Well, let me ask you—Is this your verdict that I just read?

Mrs. Chapman: It is my verdict, yes, for the plaintiff. My verdict was 'no' for the

plaintiff.—Now you are confusing me. But I didn't think he should be awarded that amount. We voted separate. Do you see what I mean?

The Court: As I told you, you have got to concur, if you are voting for the plaintiff, also have a 9 to 3 verdict in the amount.

Mrs. Chapman: We did have. Somebody else—

The Court: Now, do you—

Mrs. Hunt: We did have. Somebody else changed their vote then.

The Court: Do you, yourself—Is this your verdict?

Mrs. Chapman: Yes.

The Court: Are you sure of that, now?

Mrs. Chapman: It is my verdict for the—Yes, it is my verdict. What I am trying to get at, we made a separate vote for the amount of money they were to get.

The Court: Did you have a 9 to 3 verdict both for the plaintiff and for this amount of $10,000.00?

Mrs. Chapman: Yes, we did.

The Court: And this verdict that I read is your verdict also; is that correct?

Mrs. Chapman: Yes.

The Court: All right; it is 9 to 3. Do you agree with that, Mr. Cosgrave?

Mr. Cosgrave: I think her verdict was not in that amount, Your Honor. She did not agree to that.

Mrs. Chapman: I tried to explain that they were still 9 to 3, because they took two separate votes; it still carried, although I did not vote yes on that amount; we took two separate votes. See what I mean?

The Court:    I see. Is there any question now in your mind, Mr. Cosgrave?

Mr. Cosgrave:    Well, I don't see anything to be gained by pursuing this further, Your Honor, now.

The Court:    All right. The verdict will be filed; and you will be notified, Ladies and Gentlemen, by the Clerk or Sheriff when the next jury service is, and that, to my knowledge, will not be before the middle of November.

The Jury was excused from further attendance upon the court in this case."

A situation like that shown by the foregoing record has never before confronted this court. The nearest approximation is disclosed by the facts as reported in *Freeman v. Wentworth & Irwin, Inc.*, 139 Or 1, 7 P2d 796, where, at page 16, we learn that the jury returned a sealed verdict in favor of plaintiff and fixed plaintiff's damages at $6,000. The next day when they were polled, eight jurors replied "yes" and three "no" and one answered that she had been in favor of a verdict for the plaintiff but not in the sum of $6,000. But there the dissident juror remained firm and the results were not changed by a few further questions addressed to the foreman. Counsel for defendant moved for a discharge of the jury and the case set for retrial. The trial court being in doubt, dismissed the jury, accepted the verdict, denied the motion and entered judgment in favor of plaintiff. On appeal, this court rejected the verdict as invalid and remanded the case for a new trial.

Mrs. Chapman very clearly was one of the nine who voted for the liability of defendant but was not

one of the nine assessing damages for $10,000, or, to put it otherwise, three jurors did not agree that plaintiff was entitled to any verdict and one of the remaining nine did not agree that plaintiff was entitled to damages in the amount of $10,000.

■■ The verdict here required a general verdict. ORS 17.405.[1] Such a verdict is a pronouncement on all issues. It establishes every reasonable inference deductible from the pleadings and responsive to the issues. *Skelton v. Newberg*, 76 Or 126, 133, 148 P 53. "A verdict," says Mr. Justice Brewer, in *State v. Bybee*, 17 Kan 462, 467, "is the expression of the concurrence of individual judgments, rather than the product of mixed thoughts." It is an entirety. A tendered general verdict, therefore, should be a document reflecting the integration of the minds of the jurors to such extent that it, in fact, constitutes a legal verdict. *Freeman v. Wentworth & Irwin, Inc.*, supra (139 Or 15).

■ There are only a few cases which touch upon the subject of the voting unity required of jurors when it becomes necessary for them to first determine two or more material issues in a given case as a condition precedent to the verdict which they ultimately return to the court. But these few all hold that the minimum legal number of jurors required for a valid verdict must be the same jurors voting similarily on each separate issue demanding resolution. This is exemplified by the following cases to which we now make reference.

*Earl v. Times-Mirror Co.*, 185 Cal 165, 196 P 57 (1921), presents a situation which is closely analogous to what we find here. In that case, ten jurors voted for

---

[1] "ORS 17.405 *Verdict is general or special; definitions.* The verdict of a jury is either general or special. A general verdict is that by which the jury pronounce generally upon all or any of the issues, either in favor of the plaintiff or defendant. A special verdict is that by which the jury find the facts only, leaving the judgment to the court."

compensatory damages in the amount of $25,000 and ten for punitive damages in the amount of $5,000. But only seven of the jurors concurred in both amounts; the other five jurors voted either for compensatory damages or for punitive damages, but not for both. The court held that the judgment for punitive damages must be set aside. Unlike the case at bar, the two issues in the Earl case were independent. Here, however, in order to support a judgment for plaintiff, the jury had to firmly resolve the issue of liability of the defendants, and if finding against them, then had to determine the amount of damages to which the plaintiff was entitled. It is apparent to us that nine jurors voted for liability and the same number, but not the same nine jurors, voted for damages in the amount of $10,000. Only eight jurors concurred on both issues. Also see *Nelson v. Superior Court*, 26 Cal App2d 119, 78 P2d 1037.

In *Christensen v. Petersen* (*Schwartz*) (1928), 198 Wis 222, 222 NW 231, 223 NW 839 it appears that a lesser number of jurors than the statute required voted on the question of liability but a proper number of jurors supported the allowance of damages (the reverse of the jury action in this matter). The court rejected the verdict, saying: "* * * that at least the *same* ten jurors must agree as to the answers that establish the liability of defendant * * * and measure the amount of damages sustained by plaintiff." (222 NW 231) (Emphasis ours.) Also see *McCauley v. International Trading Co.*, 268 Wis 62, 66 NW2d 633, 638, where the court said: "To have a valid verdict *the same ten jurors* must concur in the answers to all questions which are necessary to support a judgment; otherwise the verdict is defective." (Emphasis ours.) To the same effect is *Plaster v. Akron Union Passenger*

*Depot Co.*, 101 Ohio App 27, 137 NE2d 624, app dismissed 165 Ohio St 289, 135 NE2d 61.

■ Our problem, however, goes not so much to the rule governing the manner of arriving at the jury's final verdict, but raises a question as to whether or not Mrs. Chapman clearly and finally indicated to the court that she was affirmatively voting for the verdict tendered and finally accepted and filed by the trial judge. We are unable to discover, however, any case that discloses the confusion and erroneous understanding that Mrs. Chapman, as a juror, evinced during the poll of the jurors in this matter.

The interrogation of the court addressed to her and the character of Mrs. Chapman's replies reveal that the judge was momentarily confused, as he confessed, by the unique and surprising situation revealed. It also indicates that in her affirmative responses to the trial judge's several questions she throughout was still clinging to her earlier position, that is, one of affirmation on the question of liability and one of negation on the amount of $10,000 for damages. She appeared during the interchange between herself and the court to find it difficult to employ adequate words and phrases to express herself and the judge likewise found it difficult under the pressure of the moment to convey to her what the law required, as he was trying to do. We are convinced that this colloquy did not result in clarifying to Mrs. Chapman the necessity that the same nine jurors who found liability on the part of the defendants must be the same nine who agree on the measure of damages, and that at the end of the inquiry she was still in the same state of mind concerning the measure of damages that she stated when first polled. This result should have required

the court to view the verdict as one supported by only eight jurors.

These conclusions are warranted by Mrs. Chapman's last statement made immediately before the court received the verdict and directed that it be filed, when she said:

> "I tried to explain that they were still 9 to 3, because they took two separate votes; it still carried, although I did not vote yes on that amount; we took two separate votes. See what I mean?"

It is quite evident from the voluntary statements of at least two other jurors that they, too, labored under the same erroneous impression respecting the manner of voting that Mrs. Chapman entertained. We have no doubt that if one was at liberty to inquire, it would lead to the discovery that many another jury in other cases has shared the same views and although acting in the premises erroneously, have been impelled with the same good faith present here. It is unfortunate, under the circumstances, that the court did not exercise the right conferred by ORS 17.355[2] and send the jury out for further deliberation.

By reference to ORS 17.355(2), supra, it will be noted that subsection (2) applies to two different types of verdicts. The first type considered is one tendered and usually regular on its face but supported by a lesser number of jurors than required by law. Such a verdict is invalid. The second type of verdict is that which is "informal" or "insufficient," and wherein the

---

[2] "ORS 17.355 *Number of jurors concurring; polling jury; proceedings where verdict is informal.* (1) In civil cases three-fourths of the jury may render a verdict.

"(2) When a verdict is given, and before it is filed, the jury may be polled on the request of either party, for which purpose each shall be asked whether it is his verdict: if a less number of jurors answer in the affirmative than the number required to render a verdict, the jury shall be sent out for further deliberation. If the verdict is informal or insufficient, it may be corrected by the jury under the advice of the court, or the jury may be again sent out."

informality or insufficiency is usually evident on its face. We have held that the direction to the court under ORS 17.355 when confronted with a verdict of the first kind is mandatory but when it is tendered a verdict of the second type the action of the court is discretionary. *Lehl v. Hull*, 152 Or 470, 478, 53 P2d 48, 54 P2d 290.

Unlike the verdict in *Fischer v. Howard*, 201 Or 426, 271 P2d 1059, the verdict in this matter does not present a question of irregularity or insufficiency, but one of invalidity. Here, the sole question is whether the juror Chapman was affirmatively voting with the same eight jurors on the amount of damages who with her had theretofore determined that the defendants were liable because of their negligent acts.

It follows that the judgment of the circuit court is reversed and the case remanded for a new trial.