Argued and submitted August 23, 2012, reversed and remanded April 3, 2013

## Nancy CONGDON,
*Plaintiff-Respondent,*

*v.*

## Matthias BERG,
*Defendant,*

*and*

## FARMERS INSURANCE COMPANY OF OREGON,
an Oregon corporation,
*Defendant-Appellant.*

Multnomah County Circuit Court
090405686; A147139

299 P3d 588

Thomas M. Christ argued the cause for appellant. With him on the briefs was Cosgrave Vergeer Kester LLP.

Maureen Leonard argued the cause for respondent. With her on the brief was David Paul.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

NAKAMOTO, J.

## NAKAMOTO, J.

In this action to recover uninsured motorist benefits, arising out of plaintiff's injury in an automobile accident with an uninsured driver, defendant Farmers Insurance Company appeals from a general judgment entered after a jury's verdict on damages. The judgment awarded plaintiff $48,122.87 in economic damages and $275,000.00 in non-economic damages. Defendant also appeals from a supplemental judgment awarding plaintiff attorney fees under ORS 742.061. We conclude that, as defendant asserts, the trial court erred in rejecting its request to poll the jurors individually to determine whether the same nine jurors agreed on economic and noneconomic damages, as required in this case for a valid verdict. As a result, we reverse and remand for a new trial. We also reverse the award of attorney fees and, because the issue is likely to arise on remand, hold that an award of fees was not authorized because defendant met the requirements to come within the safe harbor of ORS 742.061(3).

We address first the jury polling issue and set forth the material facts related to that issue. Plaintiff was injured in an automobile accident with an uninsured driver. She filed a claim with her own insurer, defendant, alleging that the uninsured driver was at fault and that defendant was liable for her damages. Defendant admitted that the uninsured driver was at fault and that defendant was liable for plaintiff's damages. The case went to trial only on the issue of damages.

As noted, the jury returned a verdict for plaintiff, finding that she had suffered economic damages of $48,122.87 and noneconomic damages of $275,000.00. However, the foreperson of the jury stated that the findings were not unanimous. Under the Oregon Constitution, in civil cases, "three-fourths of the jury may render a verdict." Or Const, Art VII (Amended), § 5(7); ORCP 59 G. When there is a 12-person jury, that means that the same nine or more jurors must agree, in full, on every interdependent element of a particular claim against a particular defendant. *Sandford v. Chev. Div. Gen. Motors*, 292 Or 590, 613, 642 P2d 624 (1982) ("[T]he same jurors must constitute the

three-fourths majority that finds every separate element required for the verdict."). As we noted in *Verberes v. Knappton Corporation,* 92 Or App 378, 383, 759 P2d 279, *rev den,* 307 Or 78 (1988), "at least nine jurors" is not the same as "at least the same nine jurors." The same nine jurors must agree on every interdependent element of a claim. *Id.* at 381-82; *see Clark v. Strain, et al.,* 212 Or 357, 364, 319 P2d 940 (1958) (noting with approval other cases that hold that the "minimum legal number of jurors required for a valid verdict must be the same jurors voting similarly on each separate issue" that is required to be resolved).

In civil cases, each party has an absolute privilege to request a poll of the jury to ensure that the verdict is correct. ORCP 59 G(3); *Eisele v. Rood,* 275 Or 461, 468, 551 P2d 441 (1976). In light of its uncertainty that the same nine jurors had agreed on both economic and noneconomic damages, defendant asked the court to poll the jury. The court polled the jurors collectively on each type of damages. First the court asked for a show of hands in support of the finding of economic damages. By raising their hands, nine jurors indicated that they had agreed with the finding on economic damages, and three jurors indicated that they had voted no. The court then asked the jurors about the finding of noneconomic damages. By a show of hands, eight jurors indicated that they had agreed with the findings and four indicated that they had disagreed. Counting only eight jurors in support of the finding on noneconomic damages, the court announced that the verdict was not legal and that it intended to send the jury back to deliberate further. At that point, plaintiff requested that the judge poll the jury again. The court agreed to do so and once again asked the jurors for a show of hands on each type of damages. That time, the court counted nine votes in favor of the economic damages verdict and nine votes in favor of the noneconomic damages verdict.

The court did not discharge the jurors, but sent them back to the jury room and asked the parties whether they objected to receiving the verdict and discharging the jury. Defendant's counsel expressed the concern that, even though nine jurors had supported each type of damages,

they were not the same nine jurors: "[J]uror number two was yes on the economic, no on the non-economic. Juror number eleven was reversed the same way." Plaintiff's counsel disagreed, stating that he thought he had seen the same nine jurors vote "yes" on economic and noneconomic damages. Defense counsel then stated:

> "What I would recommend is have them come in and ask each individually yes or no, and then we know for the record who is saying.
>
> "Polling them this way, where they just raise their hand without anything in the record indicating jurors number one, two, three, eight, nine or whoever has their hand up, there is no way from the record, itself, to verify or resolve this."

The court rejected defense counsel's request and declined to individually poll the jurors. The court explained that it was not certain that the same nine jurors needed to agree on the different types of damages. In any event, the court said that, because there was nothing on the verdict form itself that indicated that the *same nine jurors* had to agree on both types of damages, there was "an issue of waiver." The court entered judgment on the verdict.

On appeal, defendant argues that, as it requested and as a matter of right, defendant was entitled under ORCP 59 G(3) to have the jurors polled individually to ensure that the same nine jurors agreed that plaintiff was entitled to both economic and noneconomic damages and that the verdict therefore was proper. Under ORCP 59 G(3),

> "[w]hen the verdict is given, and before it is filed, the jury may be polled on the request of a party, for which purpose each juror shall be asked whether the verdict is the juror's verdict. If fewer jurors answer in the affirmative than the number required to render a verdict, the jury shall be sent out for further deliberations."

Although the rule's statement that "the jury may be polled" suggests that whether or not to poll the jury is a matter within the trial court's discretion, in fact, this court and the Supreme Court have said that, unless waived, a party's right upon request to have the jury polled in a civil case is absolute. In *Freeman v. Wentworth & Irwin, Inc.*, 139 Or 1,

7 P2d 796 (1932), the Supreme Court considered whether Oregon Code, title II, ch 3, § 2-319 (1930), which is similar to ORCP 59 G(3) and which stated in part that "[w]hen a verdict is given, and before it is filed, the jury may be polled on the request of either party," provided a right to polling, *id.* at 20, and whether the right had been waived, *id.* at 20-24. The court held that "our statute does not make the polling of the jury discretionary with the judge but, in harmony with the general rule * * *, grants this privilege as an absolute right." *Id.* at 20 (citations omitted); *accord Eisele*, 275 Or at 468 (citing *Freeman*); *Brummett v. Parson*, 49 Or App 588, 588-a, 619 P2d 1355 (1980) (citing *Eisele*).

Plaintiff does not dispute that general rule but offers three responses, the first two of which avoid the question of the sufficiency of the jury poll: (1) defendant waived the right to a verdict in which the same nine jurors agreed on economic and noneconomic damages;[1] (2) as a matter of law, there was no requirement that the same nine jurors agree on economic and noneconomic damages; and (3) the court *did* poll the jury, twice. We consider and reject each response in turn.

Plaintiff first contends that, by failing either to include a requirement in the verdict form or to request an instruction that the same nine jurors must agree as to each component of damages, defendant waived the right to have the same nine jurors decide both types of damages. Because of the constitutional implications of the failure to receive a three-fourths verdict, Or Const, Art VII (Amended), § 5(7), it is not by any means clear that a party waives the right to have the same nine jurors agree on all parts of the verdict when a jury instruction concerning the verdict or the verdict form may lack specificity regarding the requirements for a valid verdict. *See Shultz v. Monterey*, 232 Or 421, 425, 375 P2d 829 (1962) ("A verdict concurred in by less than three-fourths of the jury is invalid, and the failure to object thereto before the verdict is received and filed does not constitute a waiver of such invalidity."); *Clark*, 212 Or at 368 (when faced with

---

[1] We note the distinction between a waiver of the right to have the jury polled, *Eisele*, 275 Or at 468, and a waiver of the right to have the same nine jurors agree on both types of damages. Plaintiff's waiver argument relates to the latter point; there is no contention that defendant waived the right to have the jury polled.

a verdict of less than the constitutionally required number, the court must send the jury out for further deliberation). In any event, we reject plaintiff's contention as a factual matter and conclude that there was no waiver in this case, because the trial court ended up instructing the jury that the same nine jurors must agree on damages.

The verdict form, which defendant prepared, had only one question:

"1.  What are the plaintiff's damages?

"**ANSWER:**   Economic Damages:        $_____

Noneconomic Damages:   $_____

"At least nine of you must agree on the answer to question 1."

(Emphasis in original.) Although there was only one question, there were two parts to be answered: the amount of economic damages and the amount of noneconomic damages. And, although the verdict form specified that at least nine jurors must agree on "the answer to question 1," it did not specifically state that *the same nine* jurors must agree on each of the two parts of the answer.

The court and the parties spent a few minutes discussing the verdict form in the jury's presence. The court then gave the jury this instruction regarding the verdict form:

"[The verdict form] says at least nine of you must agree on the answer. So, you know, that's what I told you. It can be unanimous. It can be something between nine and twelve agreeing. It can be ten or eleven agreeing, but it must be at least nine who agree."

That part of the instruction told the jury that nine must agree on "the answer," but it did not specifically tell the jury that the *same nine* must agree on both types of damages. However, the court instructed the jury further: "Nine or more of you must agree on the verdict. * * * If the verdict is for the plaintiff, *at least the same nine jurors must also agree on the amount of damages*." (Emphasis added.) Indeed, two times further, the jury heard the court say that at least the

*same nine jurors* who said that plaintiff was entitled to a verdict must agree on the amount of damages.[2]

Thus, not only did the court instruct the jurors that nine of them had to agree on "the answer," which had two components; the jurors also heard from the court that the *same nine jurors* who agreed that plaintiff was entitled to a verdict must also agree as to the *amount of damages*. The "amount of damages" necessarily encompassed both types of damages—economic and noneconomic. That is, the same nine jurors who agreed that plaintiff was entitled to a verdict had to agree as to both economic damages and noneconomic damages. In light of the trial court's instructions to the jury and the parties' agreement with those instructions, we reject plaintiff's argument that defendant waived the right to have the same nine jurors who found that plaintiff should have the verdict agree as to both types of damages.

---

[2] The court orally instructed the jury:

"As I just indicated, this is a civil case. Nine or more of you must agree on the verdict. If your verdict is for the plaintiff—uhm, well, I had standard language, counsel. I don't know if it does any harm. It states—most of the cases we have involve disputes on liability; for instance two drivers, did somebody run a red light? So that's liability. This case is different because of agreements. This case is about damages.

"This says *at least the same nine jurors* who agree that the verdict should be for plaintiff must also agree on the amount of damages. Should I cross out that the verdict should be for plaintiff?

"[PLAINTIFF'S COUNSEL]: Yes, Your Honor.

"[DEFENSE COUNSEL]: Doesn't matter to me. It's just nine have to agree to that.

"[THE COURT]: And you said yes, that you want me to cross it out?

"[PLAINTIFF'S COUNSEL]: Yes, *at least the same nine* must also agree— must agree.

"[THE COURT]: The *same nine jurors* must agree. Okay. Initial. So it reads, 'Nine or more of you must agree on the verdict. If your verdict is for the plaintiff'—well.

"[DEFENSE COUNSEL]: You can just stop there.

"[PLAINTIFF'S COUNSEL]: That would be fine, Your Honor.

"[THE COURT]: If the verdict is for the plaintiff, *at least the same nine jurors* must also agree on the amount of damages. Is that okay?

"[DEFENSE COUNSEL]: Fine with me.

"[PLAINTIFF'S COUNSEL]: No objection. Thank you.

"[THE COURT]: Okay."

(Emphasis added.)

Second, plaintiff contends that defendant was not legally entitled to a verdict with the same nine jurors agreeing on both economic and noneconomic damages, because the two types of damages are not interrelated. *See Verberes,* 92 Or App at 381 (the same nine jurors do not need to agree on separate and independent questions involving separate claims); *Davis v. Dumont,* 52 Or App 73, 627 P2d 907, *rev den,* 291 Or 309 (1981) (same nine jurors need not agree on questions relating to separate defendants). Defendant asserts three arguments in reply, contending first that economic and noneconomic damages are indeed interrelated questions on which the jurors must agree, because, despite the verdict form's separation of damages into different types, juries tend to view the amount of the verdict as a unit. Defendant notes further that in *Shultz,* 232 Or at 425, the Supreme Court implicitly determined that the types of damages awarded in a personal injury action—such as economic or noneconomic—are "elements of damages" on which the same nine jurors must agree.[3] *See also Clark,* 212 Or at 365 (issues of compensatory and punitive damages are interdependent). Lastly, defendant replies that, whether or not agreement of the same nine jurors on economic and noneconomic damages is generally required, such agreement was required in this particular case because of the way the court instructed the jury, and that instruction became the law of the case.

We agree with defendant's last argument and do not reach the first two. Whether or not, as a general rule, the agreement of the same nine jurors would be required on both economic and noneconomic damages, in this case, the court instructed the jurors, without objection, that at least the same nine of them who had agreed that the verdict was for plaintiff must agree on the amount of damages. As we have explained, that required that at least the same nine jurors agree on the amount of both types of damages. Because the judge's instructions to the jury became the law of the case, *Fulton Ins. v. White Motor Corp.,* 261 Or 206, 223 n 5, 493 P2d 138 (1972); *Columbia Co. v. Ross Island Co.,* 145 Or 96, 108-09, 25 P2d 911 (1933); *Mays v. Vejo,* 224 Or

---

[3] In *Shultz,* the same nine jurors did not agree to "special" and "general" damages, now referred to as economic and noneconomic damages.

App 426, 198 P3d 943 (2008), *rev den*, 346 Or 213 (2009), we conclude that the same nine jurors were required to agree on both elements of damages in this case.

That leads us to the primary issue that defendant raises on appeal—whether the jury poll was inadequate. In plaintiff's view, the court satisfied the requirement to poll the jury by twice asking jurors for a show of hands on the different components of damages. Plaintiff, however, does not assert that it is patent on the record that the same nine jurors agreed on both economic and noneconomic damages. We agree with plaintiff that the trial court has some discretion in determining how the jury is polled. *See, e.g., Aronson v. Fagan*, 278 Or 135, 138, 502 P2d 974 (1974) (holding that court's explanation to jury that "of course, those of you that say 'yes' have to *agree with each* of the answers in the several questions," was clear and unequivocal and plaintiff was not prejudiced by the court's remark (emphasis in original)). In this case, though, the trial court's request for a collective show of hands does not meet the requirement of ORCP 59 G(3) that "each juror shall be asked whether the verdict is the juror's verdict." *Sandford v. Chev. Div. Gen. Motors*, 52 Or App 579, 586-87, 629 P2d 407 (1981), *aff'd*, 292 Or 590, 642 P2d 624 (1982).

As both this court and the Supreme Court explained in *Sandford*, the rule requires an individual poll of each juror in a manner that demonstrates whether each juror agreed with the entire verdict. In that case, after the jury had been deadlocked "eight-four" for hours, the foreperson told the court that the jury had reached a verdict with nine jurors. Yet, when the court polled the jury, all 12 jurors answered "yes" to the question, "Is this your verdict?" 52 Or App at 586-87. Thus, it appeared that some jurors had construed the question as asking whether there was a nine-to-three split vote. The trial court denied the defendants' request for a poll to determine whether at least nine jurors had voted similarly on the questions required for the verdict. *Id.* at 587.

We described the purpose and requirements of a jury poll under ORCP 59 G(3) in *Sandford*:

"Because of the importance of receiving a valid jury verdict, we take this opportunity to express what we believe to be the parameters of the inquiry under former ORS 17.355 and present ORCP 59 G(3). Specifically, the jury poll is not a device for delving into the deliberative process of the jury. Its purpose is to determine if three-fourths of the jurors 'agree on all issues determined by the verdict,' *Shultz* [232 Or at 424,] whether it be general or special. A general verdict returned in favor of a plaintiff (or a defendant on a counter claim) determines two issues: liability and the amount of total damages. The number of issues determined by a special verdict will correspond to the number of interrogatories asked. *Once the verdict is read, the poll, on request, can be conducted in two ways: (1) the jurors can be polled individually on each issue decided, or (2) the jurors can be asked to respond affirmatively or negatively to the question, 'Is the verdict just read your individual verdict?', with an instruction that those who say 'yes' must agree with the entire verdict.*"

52 Or App at 587-88 (emphasis added). The Supreme Court generally agreed with this court's description, but clarified further:

"This need not involve reading each separate question to each juror. If each juror is asked whether he or she agrees with each part of the verdict as stated by the foreman or read by the clerk, only a juror who indicates otherwise needs to be asked with what part he or she disagrees."

*Sandford*, 292 Or at 613 n 22. In sum, *Sandford* required the trial court to determine whether the same nine jurors agreed with each part of the verdict upon a request for a jury poll.

In this case, the trial court's failure to poll the jurors individually after the showing of hands, as defendant requested, was not harmless and is reversible error because the trial court's chosen method for polling the jury failed to establish conclusively whether the same nine jurors agreed with each part of the damages verdict. The record reflects that there was confusion regarding whether the same nine jurors agreed on both economic and noneconomic damages in the two showings of hands. If defendant is correct that

the nine who agreed on economic damages were not the same nine who agreed on noneconomic damages, then the verdict is invalid. *See Clark*, 212 Or at 364, 367 (holding verdict was invalid when same nine jurors failed to agree on both liability and damages). As the Supreme Court explained in *Sandford,* the right to have the jury polled "is designed to demonstrate that the announced result represents a valid verdict." 292 Or at 614. As in *Sandford,* under the circumstances, not knowing the outcome of an individualized poll, it is impossible to say that the absence of a correct poll of the divided jury was harmless error. *See id.*

The remaining question on this issue is whether the trial court's error requires a remand for retrial on all damages or only on one type of damages but not both. Plaintiff contends that any retrial should concern only economic damages. However, having concluded that the same nine jurors were required to agree on both types of damages in this case, we conclude, further, that the verdict was invalid and that the case must be retried on both types of damages.

We turn to the question of whether plaintiff is authorized to receive an award of attorney fees under ORS 742.061, which is likely to arise on remand. That statute governs recovery of attorney fees in actions on insurance policies like this one and provides, in part:

"(1)  Except as otherwise provided in subsections (2) and (3) of this section, if settlement is not made within six months from the date proof of loss is filed with an insurer and an action is brought in any court of this state upon any policy of insurance of any kind or nature, and the plaintiff's recovery exceeds the amount of any tender made by the defendant in such action, a reasonable amount to be fixed by the court as attorney fees shall be taxed as part of the costs of the action and any appeal thereon. * * *

"* * * * *

"(3)  Subsection (1) of this section does not apply to actions to recover uninsured or underinsured motorist benefits if, in writing, not later than six months from the date proof of loss is filed with the insurer:

"(a) The insurer has accepted coverage and the only issues are the liability of the uninsured or underinsured motorist and the damages due the insured; and

"(b) The insurer has consented to submit the case to binding arbitration."

ORS 742.061. Under the statute, a plaintiff who prevails in an action on an insurance policy is entitled to an award of attorney fees in certain circumstances set forth in subsection (1). In the context of uninsured or underinsured motorist benefits, an exception is set out in ORS 742.061(3), also known as the "safe harbor" provision. No attorney fees are due if, within six months after proof of loss, the insurer notifies the insured that (1) it accepts coverage; (2) the only issues are liability of the uninsured or underinsured motorist and damages due the insured; and (3) the insurer consents to submit those issues to binding arbitration if the parties are unable to agree on damages and liability. The parties' dispute centers on whether defendant met the safe harbor requirements.

In this case, it is undisputed that, within six months of plaintiff's submission of a proof of loss form, defendant's adjuster sent plaintiff's attorney a letter in which defendant accepted coverage generally by acknowledging that plaintiff had a policy in force and consented to submit the issues of liability and damages to binding arbitration. The letter stated, in part:

"This will confirm that the policy is in force for this loss. If we are unable to reach an agreement on the liability of the uninsured motorist or the amount of damages owed, our company consents to submit this matter to binding arbitration.

"Enclosed please find UIM proof of loss forms.

"Please provide me with a copy of all medical bills, which reference all CPT and ICD 9 Codes and reports relating to the treatment of your client's injury, as well as any records for related treatment prior to the accident. If your client is making a claim for lost wages, please provide verification of wages from the employer and a medical report from the treating physician stating your client's inability to work.

"If your client is still undergoing treatment, we would appreciate a monthly status that includes a current diagnosis, the approximate cost of treatment incurred, and a prognosis with the anticipated release date."

Plaintiff conceded that the letter, on its face, satisfied the "safe harbor" exception in ORS 742.061(3), which defendant asserted required the trial court to deny plaintiff's fee petition. Plaintiff, though, took issue with the proof of loss form enclosed with the letter.

The proof of loss form called for plaintiff to provide information concerning all of her claimed injuries, medical treatments and expenses, wage loss and loss of earning capacity, and other claimed damages. The first paragraph of that form stated:

"The information provided below will be relied upon by the insurer in determining the amount of benefits which may be payable pursuant to the insurance policy referenced below. **THIS FORM WILL NOT BE ACCEPTED AS PROOF OF LOSS UNTIL ALL AMOUNTS YOU INTEND TO CLAIM ARE STATED.**"

(Capitalization and boldface in original.)

Plaintiff contended in the trial court that, although the letter itself was sufficient to invoke the exception in ORS 742.061(3), the statement in the first paragraph of the proof of loss form—that the form would not be accepted as proof of loss until all amounts she intended to claim were stated—nullified the effect of the letter by placing plaintiff's proof of loss in dispute. Plaintiff noted that she had been receiving treatment in the weeks before trial and argued that defendant reserved the right to take the position that, as plaintiff repeatedly amended her proof of loss form due to additional medical bills for ongoing treatment, plaintiff had not yet submitted her proof of loss. Plaintiff, though, did not establish or argue that defendant had ever denied that she had provided it with proof of loss. According to plaintiff, defendant was precluded from relying on the safe harbor exception because the possibility of such a denial placed an additional issue in question besides the issues of damages and liability permitted in ORS 742.061(3)(a).

The trial court overruled defendant's objection to plaintiff's fee petition based on the safe harbor exception. In a supplemental judgment, the court awarded plaintiff all of her requested fees. Defendant's challenge on appeal is directed to whether plaintiff was entitled to fees at all and not to the reasonableness of the dollar amount of the fees requested and awarded.

On appeal, defendant contends that the trial court erred in awarding attorney fees, because defendant's letter complied with ORS 742.061(3) and the statement at the top of the proof of loss form had no bearing on defendant's acceptance of coverage and offer to arbitrate or on what issues were in dispute. We review the question of whether defendant was entitled to the protection of ORS 742.061(3), including the significance of the statement at the top of the proof of loss form, as a legal matter. *See Grisby v. Progressive Preferred Ins. Co.*, 343 Or 175, 166 P3d 519, *adh'd to as modified on recons*, 343 Or 394, 171 P3d 352 (2007) (applying standard); *Badrick v. Farmers Ins. Co.*, 238 Or App 320, 242 P3d 685 (2010) (same).

Defendant asserts that, by including on its proof of loss form a requirement that plaintiff state all the amounts she intended to claim, defendant was simply restating the requirement of ORS 742.504(5) that an insured seeking uninsured motorist benefits "give to the insurer written proof of claim * * * including full particulars of the nature and extent of the injuries, treatment and other details entering into the determination of the amount payable[.]" Plaintiff replies that defendant was surely entitled to require specificity on the proof of loss form, but that, by stating that the proof of loss "will not be accepted" until all amounts were claimed, defendant left open the possibility of disputing the sufficiency of the proof of loss. Relying on *Grisby* and two cases following it, *Badrick* and *Cardenas v. Farmers Ins. Co.*, 230 Or App 403, 215 P3d 919 (2009), plaintiff contends that, by reserving for itself the opportunity to reject plaintiff's proof of loss, defendant acted inconsistently with the requirement in ORS 742.061(3)(a) that the *only* issues in dispute must be liability and the damages due the insured.

We conclude that defendant has the better argument. As noted, plaintiff concedes that the letter by itself is sufficient to satisfy the requirement of ORS 742.061(3). We recognize, as plaintiff points out, that the proof of loss form could be a method by which an insured provides "proof of loss" as that term is used in ORS 742.061, *i.e.*, sufficient information for the insurer to investigate and estimate its rights and obligations under the policy. *Scott v. State Farm Mutual Auto Ins.*, 345 Or 146, 151-53, 190 P3d 372 (2008). But, at the same time, the form in this case is "written proof of claim" as required of an insured under ORS 742.504(5)(a),[4] that is, a method by which defendant may determine the amount of damages claimed under a policy providing uninsured motorist coverage. Reading the letter and the proof of loss form together, in a common sense manner, *see Totten v. New York Life Ins. Co.*, 298 Or 765, 770-71, 696 P2d 1082 (1985) ("The terms of a writing are presumed to have been used in their primary and general acceptation. ORS 42.250. We interpret the terms of an insurance policy according to what we perceive to be the understanding of the ordinary purchaser of insurance."), we conclude that the statement on the proof of loss form did not place in dispute anything in addition to damages due plaintiff or alter the letter's acceptance of coverage and agreement to arbitrate the amount of damages due plaintiff. Plaintiff could not reasonably have understood that, by requiring that plaintiff state all the amounts she intended to claim as a loss, defendant was revoking the letter's statement that "the policy is in force for this loss" or doing anything more than determining the amount of damages claimed.

This case is unlike the *Grisby* line of cases that plaintiff cites for its contention that defendant left more than the "damages due the insured" at issue as a result of its proof

---

[4] ORS 742.504(5)(a) provides:

"As soon as practicable, the insured or other person making claim shall give to the insurer written proof of claim, under oath if required, including full particulars of the nature and extent of the injuries, treatment and other details entering into the determination of the amount payable hereunder. The insured and every other person making claim hereunder shall submit to examinations under oath by any person named by the insurer and subscribe the same, as often as may reasonably be required. Proof of claim shall be made upon forms furnished by the insurer unless the insurer fails to furnish the forms within 15 days after receiving notice of claim."

of loss form. In *Grisby*, the insured was injured in a motor vehicle accident, and his insurer sent him a letter stating that it had "accepted coverage for [personal injury protection (PIP)] benefits" and that, in case of a dispute regarding the amount of benefits due, the insurer was willing to arbitrate. 343 Or at 177. However, the letter also said that "we may deny, limit or terminate benefits" if the insured incurred medical expenses that were not in accordance with its coverage, which required "reasonable and necessary medical expenses directly related to the accident." *Id*. The insurer then refused to pay the insured's chiropractic bills as part of PIP coverage because it maintained that the treatment was not related to the accident. *Id*. The insured prevailed on his claim that the insurer had to pay for the chiropractic treatment, but the trial court concluded that the insurer had met the "safe harbor" requirements applicable to PIP benefits in ORS 742.061(2)(a), which requires the insurer to have "accepted coverage," also a requirement for under-insured and uninsured benefits in ORS 742.061(3)(a). 343 Or at 177-78.

The Supreme Court in *Grisby* noted that the issue was not whether the words in the letter indicated a statu-torily required acceptance of coverage; rather, the question "is whether [the insurer's] acknowledgment that [the insured's] accident came within the scope of the policy means that [the insurer] 'accepted coverage' as that term is used in ORS 742.061(2)(a)." 343 Or at 180. The court held that an initial written acknowledgment of coverage generally for an acci-dent is insufficient to come within the safe harbor provision for PIP benefits when followed by a dispute over a claim for payment of particular medical treatment, because the legislature contemplated that the insurer would make "an ongoing series of decisions 'accepting' or 'denying' coverage of particular claims for services rendered by medical pro-viders." *Id*. at 181. By denying the claim for PIP benefits for the chiropractic treatment, the insurer in *Grisby* disputed not the dollar amount of PIP benefits due but, instead, its PIP coverage for the claim for medical services. *Id*. at 181-84.

In *Badrick*, a PIP benefits case like *Grisby*, the insurer wrote to the insured and advised that "[t]he policy

is in force for this loss." 238 Or App at 323. However, similar to what the insurer in *Grisby* wrote, it stated that it reserved the right to "deny, limit or terminate benefits if we determine the medical and hospital services are not reasonable or necessary, or not related to the accident." *Id*. Then the insurer failed to pay all of the insured's claims for PIP benefits. *Id*. Following *Grisby*, we held in *Badrick* that the insurer's letter left open the possibility that a claim for benefits might be denied outright and did not allow the insurer to claim the protection of the safe harbor provision. *Id*. at 327-28.

In our decision in *Cardenas*, we applied the rule in *Grisby* in an uninsured motorist case. In that case, the insurer paid the insured, who was unrepresented by counsel and who did not speak, write, or read English, $800 in exchange for a release of claims related to her injuries in a hit-and-run accident. 230 Or App at 405-06. She eventually retained counsel and demanded payment of an additional amount of damages from the insurer. The insurer objected to the insured's further recovery of uninsured motorist benefits based on the release but then sent the insured a letter in which it noted that there were "no issues as to the existence of [uninsured motorist] coverage" and offered to arbitrate. *Id*. After the parties litigated the validity of the release, the insured recovered additional amounts due to her injuries and, ultimately, obtained an attorney fee award under ORS 742.061. *Id*. at 406-07.

Upon the insurer's appeal, we held in *Cardenas* that the "safe harbor" requirement in ORS 742.061(3)(a) for uninsured motorist cases—that the only issues in dispute "are the liability of the uninsured or underinsured motorist and the damages due the insured"—is parallel to the requirement in ORS 742.061(2)(a) for PIP cases. We explained that the provision regarding PIP coverage does not refer to liability or "damages due" and instead refers to "benefits due" as the sole disputed issue, as a result of the nature of PIP coverage. 230 Or App at 411-12. Because the insurer in *Cardenas* had contested its obligation to make any payment of further benefits, like the insurer in *Grisby*, it was not entitled to immunity from liability for its insured's attorney fees. *Id*. at 412.

Here, in contrast, defendant's letter expressly accepted coverage and did not reserve the right to deny coverage, as occurred in *Grisby* and *Badrick*, or contest the obligation to pay the damages of the insured, as occurred in *Cardenas*. As noted, plaintiff has conceded that the letter satisfied the provisions of ORS 742.061(3), and we conclude that the statement on the proof of loss form requiring a complete statement of amounts to be claimed ("ALL AMOUNTS YOU INTEND TO CLAIM") for acceptance did not place coverage issues in dispute or negate the effect of the letter. Although plaintiff suggests that she was unable to provide a complete statement of amounts she would claim given her ongoing treatment, nothing in the proof of loss form would prohibit an insured from describing the nature of her injuries and the necessity of continuing treatments of various kinds for projected periods of time recommended by health care providers, and defendant accepted coverage after receiving plaintiff's initial proof of loss form.[5] Although defendant's form should more accurately state that it is a "proof of claim" form, we agree with defendant that a reasonable reading of the proof of loss form is that it requires the insured to comply with his or her obligations under ORS 742.504(5)(a) to "give to the insurer written proof of claim * * * including full particulars of the nature and extent of the injuries, treatment and other details entering into the determination of the amount payable." Accordingly, we conclude that defendant was entitled to invoke the safe harbor provision of ORS 742.061(3).

Reversed and remanded.

---

[5] In fact, the proof of loss form asked plaintiff to state her "[f]uture medical expenses expected" and to "attach a copy of any professional medical opinion relied on regarding the need for future medical expenses." Furthermore, plaintiff ignores that the insurer must timely acknowledge coverage. If the insured and the insurer disagree regarding whether the insured has provided appropriate proof of loss under ORS 742.061 or an insurer wrongly rejects the return of the kind of form supplied to plaintiff in this case by insisting on more information, despite sufficient information on the form submitted for the insurer to investigate and intelligently estimate its obligations, the insurer risks falling outside the safe harbor. *See, e.g., Zimmerman v. Allstate Property and Casualty Ins. Co.*, 246 Or App 680, 267 P3d 203 (2011), *rev allowed*, 352 Or 25 (2012).